Wilbur S. Peck *et al.*

*v.*

Nicholas D. Dyer *et al.*

*Filed at Ottawa October 26, 1893.*

1. Fraudulent conveyances—*execution and assignment of promissory notes.* An assignee of promissory notes before maturity, which are secured by mortgage, who is not chargeable with bad faith or fraud in their execution, and has no notice that the notes were made to defraud creditors, will be protected, and upon a sale of the mortgaged premises will be entitled to priority over the claims of other creditors.

2. Where the records show the forfeiture of a contract for the purchase of land, and a conveyance by the vendor to another, who conveys to the wife of the vendee, who gives her notes for the price, secured by

deed of trust, and the records afford no notice of fraud and collusion in the transaction, a purchaser of such notes before maturity, in the absence of actual notice of fraud, will be protected as a *bona fide* purchaser.

3. SALES—*forfeiture of contract—for non-payment of purchase money.* Where a contract for the purchase of land provides for a forfeiture for non-payment of notes given for the purchase money, a declaration of forfeiture may be made for default in payment, and thus put an end to the interest of the purchaser, unless it is done by collusion between the parties thereto, for the purpose of defrauding creditors obtaining a lien on the land before such declaration.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. J. K. WILSON, for the appellant:

The levy of executions on land in a foreign county, by filing certificates of levy, will operate as a lien, and is notice of the rights of the judgment creditor therein. Rev. Stat. chap. 77, secs. 4, 34; *Brown* v. *Niles,* 16 Ill. 385; *McClure* v. *Engelhardt,* 17 id. 47; *Reichert* v. *McClure,* 23 id. 516; *Conwell* v. *Watkins,* 71 id. 488.

That equitable interests are liable to execution, and as to what the lien attaches, are matters well settled in Illinois. Rev. Stat. chap. 77, sec. 3; *Niantic Bank* v. *Dennis,* 37 Ill. 381; *Massey* v. *Westcott,* 40 id. 160; *McNab* v. *Heald,* 41 id. 326; *Buggy Co.* v. *Graves,* 108 id. 459; *Gorham* v. *Farson,* 119 id. 425.

After such lien attaches, the vendor can not destroy or impair the interest of the vendee, as fixed by the contract. *New* v. *Oldfield,* 110 Ill. 138; *Tinney* v. *Wolston,* 41 id. 215; *Young* v. *Ward,* 115 id. 264; *Gorham* v. *Farson,* 119 id. 425.

The declaration of forfeiture was not made in good faith, and ought not to stand. Circumstances, when proved, which convince the mind that the fraud charged has been perpetrated, is all that is necessary. *Cowling* v. *Estes,* 15 Bradw. 255; *Treadwell* v. *McEwen,* 123 Ill. 253.

Where a note is indorsed by the payee, without date, it is a presumption of law that it was assigned at the date of its execution. *Stewart* v. *Smith,* 28 Ill. 397; *White* v. *Weaver,* 41 id. 409; *Smith* v. *Nevlin,* 89 id. 193.

Mr. GEORGE S. HOUSE, for the appellees:

The record did not show bad faith in the transaction, or give notice to Hardy of any fraud, or that the rights under the contract of purchase were not legally and equitably terminated by the declaration of forfeiture.   Under these circumstances the executors were entitled to protection. *Spicer* v. *Robinson,* 73 Ill. 519; *Bradley* v. *Luce,* 99 id. 234.

In this State, a party deals with and concerning real estate, upon the face of the records affecting the title, in the absence of notice from other sources. *Massey* v. *Westcott,* 40 Ill. 160; *Buggy Co.* v. *Graves,* 108 id. 462; *Bradley* v. *Luce, supra.*

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 12th of January, 1886, appellants obtained judgments in the circuit court of Cook county against one Osmond Fox, and on the same day caused executions to issue thereon, directed to the sheriff of Will county.   On the next day he levied them on the lands in controversy, and filed certificates of the levies at 12:40 o'clock P. M. of that date.   Osmond Fox was at that time in possession of the premises, and held a contract of purchase for the same from William A. Strong and wife, dated January 24, 1878.   His contract provided that he should be entitled to a deed upon the payment of $2400, and that in default of his making payment of that sum according to his two certain promissory notes, the vendors might declare the contract forfeited.   This contract was recorded in the recorder's office of Will county at the time of the levies above mentioned.   Fox had made valuable improvements upon the land after his purchase, and before the levies, valued at $11,000.   On the same day the levies were made, but after the hour of filing the certificates thereof, the First

National Bank of Joliet recovered a judgment against Fox for $2525, and costs of suit, in the circuit court of Will county. On the 17th of April, 1886, Strong delivered to Fox a declaration of forfeiture of the above mentioned contract, and gave him his notes. Strong at the same time filed a copy of this declaration of forfeiture for record in the recorder's office of Will county, and the same was duly recorded. On the same day he and his wife conveyed the premises by warranty deed, the consideration named in the deed being $2500, to Frederick W. Woodruff, who was at the time president of the above named bank. On the same day, Woodruff and wife, by special warranty deed, conveyed the same to Ann Jane Fox, wife of Osmond Fox, in consideration of $5000, evidenced by five $1000 promissory notes of that date, each payable in three years, with eight per cent interest, payable semi-annually, signed by Mrs. Fox, and payable to Woodruff, secured by a trust deed upon the premises conveyed. Mrs. Fox took and remained in possession of the land from the date of her deed to the filing of this bill. The circuit court found that the notes given by her were designed to pay the amount due the Strongs, and the judgment of the bank. Woodruff assigned these notes to Otis Hardy, appellee's intestate, before maturity. Appellees insist that this transfer was made on the 21st day of October, 1886, but appellants contend that there is absence of proof on that subject, and therefore it must be assumed that it was made at the date of the notes.

On the 17th of April, 1888, appellants filed their bill in chancery, to set aside the declaration of forfeiture by Strong against Osmond Fox, and the deeds by the former and his wife to Woodruff, and by Woodruff and wife to Ann Jane Fox, as fraudulent and void, as against their said execution levies. They also charge in their bill that Ann Jane Fox holds the premises in question in trust for her husband, Osmond Fox, but concede that the amount actually due the Strongs from Osmond Fox on the contract of purchase is a prior lien to their

levies.   To this bill the executors of Hardy were not made par-
ties, but at their request they were allowed to appear and de-
fend, and to file a cross-bill, by which they sought a foreclosure
of the trust deed executed to secure the notes as above set forth.

On the hearing, a decree was rendered in favor of appel-
lants, against Ann Jane Fox, but against them on the issues
made on the cross-bill.   There was found to be due on the
notes above described the sum of $5540, for which, with a
solicitor's fee of $100, a decree of foreclosure and sale was
rendered, providing that $1000 should first be paid out of the
proceeds to Mrs. Fox, for her estate of homestead, unless the
same should be assigned before sale.   After the payment of
the amount found due on the notes, and the solicitor's fee, the
judgments of appellants were to be paid in full.

The only question involved in this appeal is, whether the
circuit court was justified by the evidence in finding the ex-
ecutors of Hardy entitled to priority over appellants in the
satisfaction of their claim.   Appellants concede that to the
amount due the Strongs from Osmond Fox, found to be $2440,
the notes executed by Ann Jane Fox, and secured by the
trust deed, should be given priority over their judgments,
but they insist that as to the balance due on those notes all
parties interested should be postponed until after their liens
are satisfied.   In other words, the controversy between the
parties to this appeal is resolved into the single inquiry, was
Otis Hardy an innocent purchaser of the notes transferred to
him, or should he be held charged with notice of the alleged
fraud of the original parties thereto.   It is not claimed that
he was chargeable with actual notice of such fraud, but that
the records of Will county were constructive notice of the
interest of Osmond Fox in the lands, and of appellants' lien
thereon, and which, with the conveyances of April 17, were
sufficient to arouse the suspicions, and put a reasonable man
on inquiry as to the consideration for the notes, and motives
of the parties in making them.

The Strongs had a clear right, under their contract with Osmond Fox, to declare it forfeited. It does not seem to be denied that they did so, and in a lawful manner. That forfeiture put an end to the interest Fox had in the premises, unless it was made by collusion between Fox and the Strongs, for the purpose of placing the property in the name of Fox's wife, and to give the bank judgments priority over the liens of appellants. What means had any one not a party to the transaction of knowing that there was such collusion? Certainly the records furnished no evidence of that fact. It showed a legal title in Mrs. Fox, and her trust deed to secure the notes. How, then, unless there was actual notice of collusion and fraud between the parties to the transaction, could the purchaser of the notes before maturity be concluded by that collusion and fraud? Whether the notes were assigned on the 21st of October, as stated by the Appellate Court, or the presumption should obtain that they were assigned the day they were made, is a matter of no consequence. Even if assigned on the same day, there would be no stronger presumption of notice of the transaction out of which they grew than if they were transferred months afterwards, unless it appeared that the assignment was a part of the same transaction in which they were made, and of that there is no pretence. It is not claimed that Hardy had any part or interest in the transactions out of which the notes and trust deed grew. He had no motive, so far as the evidence goes, to be a party to the transaction, directly or indirectly. It being conceded that Hardy became the assignee of the notes before maturity, and there being no evidence of bad faith on his part, or of fraud in the execution thereof, his executors are entitled to the priority decreed them by the circuit court. *Bradley* v. *Luce*, 99 Ill. 234; *Spicer* v. *Robinson*, 73 id. 519.

The judgment of the Appellate Court is in conformity with our views of the law applicable to the case, and it will be affirmed.                                    *Judgment affirmed.*