## MUIRHEAD v. McCULLOUGH.

1. DEEDS—ESCROW—A DEED DELIVERED IN ESCROW ON CONDITION
   IS OF NO FORCE UNTIL CONDITION MET.

   A deed delivered to a third person in escrow, to be de-
   livered to the grantee only on condition of the latter's
   paying a sum of money or performing some other obliga-
   tion, is of no force until such condition is fulfilled.[1]

2. VENDOR AND PURCHASER—DEFAULT—FORFEITURE—MERE LAPSE
   OF TIME AFTER DEFAULT DOES NOT TERMINATE CONTRACT.

   Where the vendors in a land contract took no steps to
   exercise their option to treat the contract as forfeited,
   mere lapse of time after default would not put an end
   to it, since default is required to be followed by some
   act of the vendors indicating election to consider the con-
   tract at an end before it would be terminated.[2]

3. SAME—WHO ENTITLED TO POSSESSION ON DEFAULT.

   Where the vendee in a land contract was holden for the
   deferred payments, he was entitled to possession of the
   premises on default of the assignee of his vendee in a
   second contract.[3]

4. SAME—WHO ENTITLED TO MAINTAIN PROCEEDINGS FOR POSSES-
   SION.

   The party presently entitled to possession of land sold on
   land contract is the proper party to maintain proceedings
   to recover possession.[4]

5. SAME—DEMAND FOR PAYMENT AND DECLARATION OF FORFEITURE
   NOT CONDITIONS PRECEDENT TO PROCEEDINGS FOR POSSESSION.

   Demand for payment and declaration of forfeiture are not
   specifically required by the statute and are not conditions
   precedent to notice to quit and summary proceedings for
   possession, although it has been held in certain cases
   that when the contract so requires, or after acquiescence
   in a protracted default, a demand of payment and reason-
   able notice of forfeiture, as well as notice to quit are

---

[1]Escrows, 21 C. J. § 25; [2]Vendor and Purchaser, 39 Cyc. p.
1384; [3]Id., 39 Cyc. p. 1621; [4]Id., 39 Cyc. p. 1681.
Necessity of strict compliance with conditions of escrow agree-
ment, see note in L. R. A. 1916A, 502.

essential to termination of the contract relations between
vendor and vendee.[5]

6. SAME—DEFAULT—FORFEITURE—NOTICE—WAIVER.
   Where the vendee in a land contract waived all right to
   notice for recovery of possession in case of default, his
   vendee in a second contract and the assignee of said vendee,
   by assuming all of the original vendee's obligations under
   the original contract, also waived said right.[6]

7. CONTRACTS — PARTY ASSUMING CONTRACT AND ACCEPTING ITS
   BENEFITS MAY NOT REPUDIATE ITS OBLIGATIONS.
   A party may not claim benefits granted in a contract which
   he agrees to assume, and repudiate its obligations.[7]

8. TAXATION—MORTGAGES—LAND CONTRACTS—STATUTES.
   Only mortgages and other instruments creating a lien on
   real estate are subject to the taxes imposed by 1 Comp.
   Laws 1915, § 4268, and, therefore, a futile, conditional
   agreement to assign a certain land contract *in futuro*
   which created no lien was not of the class of contracts
   contemplated by the act.[8]

Error to Oakland; Covert (Frank L.), J.    Sub-
mitted June 11, 1925.    (Docket No. 48.)    Decided
March 20, 1926.    Rehearing denied June 7, 1926.

Summary proceedings by Richard Muirhead against
John B. McCullough for the possession of land.    There
was judgment of restitution, and defendant appealed
to the circuit court.    Judgment for plaintiff on a
directed verdict.    Defendant brings error.    Affirmed.

*Bigelow & Rankin,* for appellant.

*Patterson & Patterson,* for appellee.

STEERE, J.    Plaintiff commenced this case by sum-
mary proceedings before a circuit court commissioner
of Oakland county to recover possession of a place
commonly called the Perry farm, consisting of about
170 acres of land located in Oakland township, in said

[5]Vendor and Purchaser, 39 Cyc. p. 1892; [6]Id., 39 Cyc. p. 1892;
[7]Assignments, 5 C. J. § 169; [8]Taxation, 37 Cyc. p. 781.

county, in the vicinity of the village of Rochester. The farm formerly belonged to Oliver Perry, deceased, who left it to his two children, Jacob H. Perry and Mrs. Jessica M. Simons (nee Perry), subject to a life estate of their mother Jennie Perry. Briefly stated chronologically, on February 22, 1917, the two Perrys and Mrs. Simons sold the farm under a land contract to plaintiff Muirhead for $17,000, upon which he agreed to pay $1,000 on execution and delivery of the contract and the balance within five years with 6% interest. On March 20, 1917, Muirhead found a purchaser named White and entered into a contract with him by which the latter agreed to pay Muirhead $1,000 upon execution of their contract, $900 more within 90 days, and to perform all Muirhead's obligations under the latter's contract of purchase from the Perrys, Muirhead agreeing to assign him his interest in the Perry contract, to take effect when such assignment was consented to by the Perry vendors. Muirhead also agreed to execute a deed of the Perry farm to White—

"with the usual covenants of seizin against incumbrances and warranty subject to the purchase money owing upon said contract, with an agreement therein by the grantee to assume and pay the same and deposit the same with the First National Bank of Rochester, Michigan, to be delivered to the said White or such person as he may direct whenever the interest of the said Muirhead in said land and contract shall become transferable or the vendors in said land contract will consent to a transfer thereof or the interest of the vendors shall have been satisfied and the legal title to the land conveyed by them."

This he did, and put White in possession of the farm, but did not obtain from his vendors a consent to the assignment to White of his land contract from them according to the condition imposed by the contract with White, who, however, paid Muirhead the next

payment of $900 within 90 days, and continued in possession of the farm, making various payments on the Perry contract and for taxes, until the spring of 1922, when, on March 18th, he sold what interest he had in the farm to defendant McCullough for a stated consideration of "$1 and other considerations," McCullough agreeing with White to—

"make all payments due under said contract and assignment (of March 20, 1917, between Muirhead and White) and to defend any and all actions at law growing out of said contract and assignment, and to save the said Charles H. White harmless from any obligations or actions at law to which he might be subject, provided this assignment were not made."

White then delivered possession of the farm to McCullough and went his way, but bethought himself to notify Muirhead and wrote him the following letter from Detroit, dated March 28, 1922:

"*Dear Sir:*  This will advise you that I have transferred all my rights and equity in the so-called 'Perry farm,' to Mr. J. B. McCullough, of Oakland township, Oakland county, Michigan, and all further dealings and matters regarding the farm are to be taken up with him.

"Yours very truly,
(Signed)   "C. H. WHITE."

In the meantime Jacob H. Perry, then at Pontiac, appears to have received some rumor of that shift and wrote a letter to Muirhead, then at Birmingham, dated March 20, 1922, reading in part as follows:

"*Dear Sir:*  This is calling your attention to the contract entered into with me for the farm which, as you know, there remains a balance of $15,000 which will be due April 1, 1922, and which we shall expect settlement from you on that date.   *   *   *

"Let me hear from you when you can come.   By the way, have you seen Mr. White lately, so as to know where you are at with him.   I understand he has sold off everything he has on the farm.   Let me hear

from you at your earliest convenience when you can come.

"Yours truly,
(Signed) "JACOB H. PERRY."

It then, if not before, dawned on Muirhead that there might be an aftermath to his quick and apparently profitable turn-over of that piece of real estate back in 1917. The explanation he gives for his complacent indifference and nonaction in that matter is far from illuminating. Of his deal with White he said in part:

"Slocum-Tucker Company made the sale. I had no commission to pay in that sale. They charged the commission to Mr. White. All that was coming to me under Exhibit B (his contract with White) was the $100, and interest on it, if not paid when due—when the Perrys accepted Mr. White; I could not swear that they have accepted him. I found out after June last that Mr. White made the payments to the Perrys. I never made any payment at all from the time I executed this agreement with Mr. White in 1917 up to last June (1922)."

But the letter from Jacob Perry of March 20, 1922, telling him that under his contract for the farm he would be expected to meet the balance of $15,000 falling due on the 1st of April next, followed in a few days by White's letter advising he had turned whatever interest he had in it over to McCullough and abandoned the place, inspired him to pay six months' interest on the unpaid $15,000, amounting to $450, the back taxes on the farm for 1921, amounting to $370, and, after a fruitless interview with McCullough, to make a written demand on him for possession of the farm. On July 17, 1922, he began these summary proceedings before a circuit court commissioner to recover possession and there had a judgment of restitution, in connection with which the commissioner found "$15,924 due on land contract." Defendant appealed and on

retrial in the circuit by jury the previous judgment was affirmed under a directed verdict.

Defendant's assignments of error are argued under the propositions that by his deed to White delivered in escrow to the Rochester bank, Muirhead had parted with all his interest in and right to the farm; "no notice of default and demand of payment preliminary to declaration and notice of forfeiture" was given prior to commencement of his summary proceedings; and the specific tax on his contract with White had not been paid as required by 1 Comp. Laws 1915, § 4268.

Muirhead did not part with any of his rights to or interest in the Perry farm by leaving his deed of it running to White in escrow with the Rochester bank. The deed was never delivered to the grantee, and never can be under the conditions of the escrow. White did not comply with those conditions, nor did McCullough for him. When this case was begun all deferred payments on the Perry contract were past due and unpaid. A deed delivered to a third person in escrow, to be delivered to the grantee only on condition of the latter's paying a sum of money or performing some other obligation, is of no force until such condition is fulfilled.

The contract from the owner to Muirhead was a carefully prepared land contract. Its terms of payment required that the full purchase price should be paid with 6 per cent. interest on all deferred payments, on or before five years from date of the contract. He was to pay all taxes assessed against the property, keep all buildings repaired and insured, keep all fences in repair, care for and spray the orchards, refrain from waste, etc. It provided for forfeiture in case of default on his part and liability to removal as a tenant holding over without notice to quit or surrender possession being required, all such notices being expressly waived by him. It was further expressly agreed—

"that no sale, transfer arrangement or pledge of this contract shall be in any manner binding upon the parties of the first part, unless they first consent in writing hereon to such sale, transfer or pledge."

This the owners never did and they testify without dispute that when requested to do so they positively refused.    Neither did they see fit to take any steps to exercise their option to treat his contract with them forfeited.    Mere lapse of time after default would not put an end to it.    Default in payment is required to be followed by some act of the vendor indicating his election to consider the contract at an end before it would be terminated (*Converse* v. *Blumrich,* 14 Mich. 109 [90 Am. Dec. 230]).    Under his existing contract with the owners, by which he was holden for the deferred payments, he was entitled to possession of the place, and the party presently entitled to possession is the proper party to maintain proceedings to recover possession (*McGuffie* v. *Carter,* 42 Mich. 497).

Defendant's claim that a demand for payment and declaration of forfeiture was a condition precedent to notice to quit and summary proceedings for possession is not tenable under the facts shown here. The statute does not specifically so provide.    It is true, as defendant's counsel point out, this court has held in certain cited cases that when the contract so requires, or after acquiescence in a protracted default, a demand of payment and reasonable notice of forfeiture, as well as notice to quit, are essential to termination of the contract relations between vendor and vendee.    McCullough came into possession of this place without the consent or knowledge at that time of the Perrys or Muirhead.    They then knew nothing of his deal with White.    Although he knew the entire unpaid balance would shortly fall due McCullough took no steps to meet it.    He was not in privity with the owners and vendors nor with their vendee, unless

through the abortive contract the latter had given to White to whom he paid but one dollar in money, the "other consideration" being, as explained by him:

"City property—three or four lots, I have just forgotten; three, I think; I have no record of the lots I turned over; I don't think the value of my equity in the lots was talked over by Mr. White and myself. This deal was closed in Detroit."

On cross-examination he said:

"When I took that assignment I understood there was six months' interest due the 1st of April and also $15,000 on principal; I did not know that the taxes for 1921 were not paid; I did not pay the interest that was due April 1st, and I have not paid the $15,000 or any part of it, or any taxes.    I have not paid a dollar on Exhibit A. (the Perry contract).    I have not paid anything for the use of that farm for the year I have had possession of it."

Whatever possible rights he can claim in relation to this property arise from his contract with White, whose rights were limited to his contract with Muirhead, whose rights were defined by his land contract of purchase from the Perrys.    By it Muirhead waived all right to notice for recovery of possession in case of default and by assuming all the vendee's obligations under that contract, so did White and McCullough. The latter in his contract with White affirmatively so obligated himself "and agreed to be bound by the conditions of said contract of February 22, 1917," a copy of which was attached to and made a part of his agreement with White.    He could not claim benefits granted in that agreement and repudiate its obligations.

As to the contention that Muirhead's agreement with White was erroneously admitted in evidence because the taxes imposed by 1 Comp. Laws 1915, § 4268, had not been paid, it is to be noted that section only applies to mortgages and other instruments creating

a lien on real estate.  The land contract from the owners to Muirhead did create a lien in the vendee's favor, and that tax had been paid, but his futile, conditional agreement to assign that contract *in futuro* created no lien and was not of the class of contracts contemplated by the act.

The judgment is affirmed.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

Justice MOORE took no part in this decision.