(No. 17903.—Reversed in part and remanded.)
Samuel Lanski, Appellee, *vs.* The Chicago Title and Trust Company *et al.* Appellants.

*Opinion filed February 16, 1927.*

1. Specific performance—*burden is on complainant to show readiness and ability to perform—tender.* In a suit for specific performance the burden is on the complainant to show that he was ready, able, anxious and willing to perform, and it is necessary that he should have tendered performance unless there are circumstances which relieve him of that necessity.

2. Same—*attorney employed to give advice is not client's agent in transaction.* The employment of an attorney to advise a client in regard to questions of law involved in the purchase or sale of real estate does not constitute the attorney the agent of the client in handling the details of the transaction, such as a receipt of the purchase money, accepting a deed or mortgage, or the waiver of any condition or requirement of the contract, except as the attorney is specifically authorized to act.

3. Same—*when cross-bill praying for cancellation of a contract is properly dismissed—forfeiture.* Equity, in a suit to remove a cloud upon title, will recognize rights resulting from a forfeiture properly declared under a real estate contract, but in a suit by a vendee for specific performance after the vendor has declared a forfeiture, a cross-bill praying for cancellation of the contract in accordance with the vendor's declaration of forfeiture is properly dismissed, where it does not allege that the vendee is in possession or that the contract has been recorded and there is no sufficient showing that the vendor had a right to declare a forfeiture, notwithstanding the original bill must be dismissed for failure of the vendee to show performance on his part.

4. Same—*declaration of forfeiture after default puts an end to contract.* Where a contract for the purchase of land provides that the vendor may declare a forfeiture in case of non-payment of the purchase money, a declaration of forfeiture after such default will put an end to the interest of the purchaser, and where time is of the essence of the contract the vendor is at liberty to act as if the contract had ceased.

Appeal from the Circuit Court of Cook county; the Hon. Hugo M. Friend, Judge, presiding.

C. O. LOUCKS, V. R. LOUCKS, and A. R. PETERSON, (TOM LEEMING, of counsel,) for appellants.

ISAAC B. LIPSON, (FRED E. NEWTON, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Samuel Lanski and E. F. Shellaberger contracted for the purchase by Lanski of Shellaberger of certain real estate in Cook county, the title of which was held by the Chicago Title and Trust Company in trust for Shellaberger. Lanski sued Shellaberger and the Chicago Title and Trust Company for a specific performance of the contract, and Shellaberger filed a cross-bill for its cancellation. Issues were joined and the cause was referred to a master, who heard the evidence and reported it with his conclusions recommending a dismissal of the original bill and a decree in accordance with the prayer of the cross-bill. The chancellor sustained exceptions to the report and entered a decree of specific performance, dismissing the cross-bill. The defendants to the original bill have appealed.

The controverted question on which the case turns is whether the complainant was ready and willing to perform and made proper tender of performance on his part, and the master found against the complainant on this question, while the court found that Lanski paid the earnest money required by the contract, and within the time of performance, as extended by agreement, tendered payment of the balance due under the contract in substantially the manner and form required by the agreement, but that Shellaberger made a studied effort to make it impossible for the complainant to perform and has at all times refused to comply with the contract.

The consideration for the sale was $35,273, of which the receipt of $1500 earnest money was acknowledged,

$8773 was to be paid within five days after the title was examined and found good and $25,000 on or before two years after the date of the delivery of the deed, with six per cent interest, to be secured by the purchaser's note and mortgage or trust deed of the premises in the form known as Chicago Real Estate Board form for unimproved property, Form G. G.   The contract was dated March 17, 1922, and was executed by Lanski and Shellaberger in the office of Hedberg & Bistor, real estate brokers, by whom it was kept, together with the cash payment of $1500, which was made about April 6.   It provided for the furnishing of a guaranty policy.   An opinion of title was furnished by the trust company on the order of Hedberg & Bistor, who delivered it to Walter H. Eckert, Shellaberger's attorney, and he to Joseph A. Golde, who was an attorney acting for Lanski and was interested in the contract for himself.   On April 24 Shellaberger, as directed by Golde, authorized the trust company to issue a deed of the property to Lanski and Golde and deliver it to Hedberg & Bistor.   The deed was issued and delivered to Shellaberger, who retained it awaiting the consummation of the transaction, which the contract provided should be at the office of Hedberg & Bistor, in Chicago.   Shellaberger lived at DeKalb.   May 15 was set for the conclusion of the matter, but it was not concluded on that day.   Subsequent appointments were made for its consummation, but Lanski and Golde either failed to keep them or asked for more time.   Shellaberger made many trips to Chicago to meet these engagements, and a final appointment was made between Eckert and Golde for the consummation of the transaction on July 5.   Eckert agreed, as Golde testified, that currency would not be required but a cashier's check would do.   Eckert denied this.   Shellaberger mailed a notice to Lanski that the contract must be complied with on or before two o'clock on July 5, and on that day he was waiting in the office of Hedberg & Bistor to perform his contract.   Eckert was in

324—24

his office, about three blocks from Hedberg & Bistor's, and Golde telephoned Eckert that he was coming to Eckert's office. He did come, with Lanski, to Eckert's office about 1:30 or 1:45. There is a dispute in the evidence as to what then occurred. Golde and Lanski testified that they and Eckert were the only ones present during the first part of the conversation; that Eckert's stenographer, Miss Baer, came in later upon the summons of Eckert, while Eckert and Miss Baer testified that Miss Baer was present during the whole of the conversation. Golde testified that he offered Eckert a promissory note for $25,000, with interest coupons and Federal revenue stamps and a trust deed securing its payment, together with currency amounting to $8774, saying: "Here is $8774, the balance of the purchase price to be paid you in cash in connection with the closing of this deal, together with a trust deed, principal note, interest note and revenue stamps, representing the mortgage to be given back as part of the purchase price for the sale of this property. All of this I am offering you in accordance with the terms of the contract for a warranty deed to the premises described, in accordance with the terms of the contract." Eckert took the money and papers in his hand and began to examine the trust deed. He said that it was not dated properly but should have the same date as the deed, May 5, and that Shellaberger was entitled to interest from that time and not from July 5, the date of the trust deed. Golde said that the trust deed was prepared in accordance with the terms of the contract. Eckert then said that Mrs. Lanski should sign the trust deed, to which Golde replied that nothing in the contract required her signature and her signature was not needed, as it was a purchase money mortgage, but if Eckert wished her signature Golde had no objection if time were given to bring her down. Eckert said that it was not right, and added, "Wait a minute and I will call in my stenographer and you can dictate a statement to her." Golde said: "There is no

necessity for my dictating a statement; here is the money, trust deed and note; I want my deed." Eckert said, "I have a deed in my hands," and held up a document which Golde asked to examine, but his request was refused and he and Lanski left. Lanski testified substantially to the same effect, and that when Eckert produced the paper which he said was a deed he said that he would deliver it if the date of the papers was changed to May 5. Lanski also testified that Eckert first counted the money, and in this respect his testimony is at variance with that of the other three witnesses.

Eckert testified that Golde said that he wanted to make a tender, and exhibited a trust deed, notes and some money. Eckert said that he was always glad to take money and opened the package, first examining the trust deed. Upon examination he found the trust deed was not satisfactory and objected that it should have borne the same date as the deed, and also that it was not in the form provided for in the contract and was not signed by Mrs. Lanski. He then started to count the money and said to Golde that it was not legal tender. He started to dictate to his stenographer a list of the bills, and when three or four of them had been described Golde reached over and took the money and the papers and the interview closed. Eckert's testimony was corroborated by Miss Baer. In the meantime Hedberg had been notified by the telephone girl in Eckert's office that Golde and Lanski were there and at once started from his office to Eckert's office, passing Golde and Lanski as they went down in the elevator. Nothing further was done until August 2, 1922, at which time Shellaberger gave Lanski written notice that he had elected to terminate the contract because of Lanski's failure to perform, and to retain the earnest money as liquidated damages. The original bill was filed in this suit September 1, 1922. Eckert's agency for Shellaberger is denied as well as his possession of the deed.

The evidence does not show that Eckert was Shellaberger's agent or had any authority to deliver the deed or accept the money, the note or the trust deed. There is no evidence of any other relation which he sustained to Shellaberger than that of a lawyer to advise his client upon any legal questions which might arise in the transaction of the business. Eckert was called as a witness by the complainant, and in his examination in chief testified that Shellaberger was his client and he represented Mr. and Mrs. Shellaberger as their attorney. Hedberg & Bistor asked him to be present at the closing of a deal which they expected to close on a certain date. They asked him to look after the details if there were any legal matters to come up; that he did not prepare the notice to be served on Lanski and knew nothing about it before it was sent; that he did not know that a conference was to be held in his office until Golde called him a few minutes before two o'clock on July 5 and asked him if he would be there, saying that Golde was coming over; that Shellaberger came into his office from time to time, and he presumed that during the period between the time he had the first conversation with him and Hedberg and July 5 Shellaberger spoke to him about the matter. He believed the talk was that he expected to close the deal and wanted to know if Eckert would be in town or would be available. Shellaberger was relying upon Hedberg to close the deal and asked Eckert to sit in and look after any legal matters. That is all he ever said to Eckert about it. He told Shellaberger, after Golde had been in his office on July 5, what had occurred there, and Shellaberger told him he had been waiting at Hedberg's office to close the deal. He did not know when Golde telephoned to him where Shellaberger was. Golde said he would be over there (at Eckert's office) but did not say anything about Lanski, and Eckert did not understand that he would be over there to close the deal.

There is no evidence to indicate that Shellaberger was not willing and ready to comply with the contract. He had a deed prepared ready for delivery, and he had made eight or ten trips to Chicago by appointment to consummate the contract. It was not his fault that the contract was not performed but it was the fault of the complainant. In a suit for specific performance the burden is on the complainant to show that he was ready, able, anxious and willing to perform, and it is necessary that he should have tendered performance unless there are circumstances which relieve him of that necessity. The complainant has not sustained this burden. The evidence is that Eckert objected that $8774 which Golde handed him was not legal tender, and this is not denied. Golde testified that Eckert told him that he did not have to bring currency,—that a check would suffice,—but Eckert denied that any such conversation occurred, and no reason is suggested why Golde's testimony should be accepted rather than Eckert's. In view of the evidence in the case, what took place in Eckert's office in regard to the supposed tender of performance by Lanski is of little importance. Even if a tender had been made to Eckert it would have been of no avail, for he was not shown to have any authority to accept it. He had no employment except to give advice on legal questions which might arise. The employment of an attorney at law to advise a client in regard to questions of law which may arise in a business transaction, such as the purchase or sale of real estate in which the client is engaged, does not constitute the attorney the agent of the client to transact the business of the client generally or his business in the particular transaction except as the attorney is specifically authorized to act. The attorney may not, unless specially authorized, receive the purchase money, accept a deed or mortgage, waive any condition or requirement of the contract, or do any other thing to affect the interest of the client whom he has been employed merely to advise. He

may advise his client according to his ideas of the client's lawful right, but the client is not bound to accept or act on the attorney's advice but may do exactly the opposite if he thinks best. Eckert was the complainant's witness, and there is no contradiction of his testimony about his relation to Shellaberger and no act of his tending to dispute it, and if there were it would not be binding on Shellaberger. The court erred in requiring a specific performance of the contract by Shellaberger and should have dismissed the bill for want of equity.

The cross-bill was properly dismissed. It did not allege that the appellee was in possession of the real estate or that the contract had been recorded. The abstract does not set out the contract sufficiently to show that Shellaberger had a right to declare a forfeiture. Where a contract for the purchase of land provides that the vendor may declare a forfeiture in case of non-payment of the purchase money, a declaration of forfeiture after such default will put an end to the interest of the purchaser; (*Peck* v. *Dyer,* 147 Ill. 592;) and after a declaration of forfeiture has been made, where time is of the essence of the contract, the vendor is at liberty to act as if the contract had ceased. (*Chrisman* v. *Miller,* 21 Ill. 227.) While equity will not declare a forfeiture, yet in a decree upon a bill to remove a cloud upon title it will recognize rights resulting from a forfeiture declared under a real estate contract. (*Lang* v. *Hedenberg,* 277 Ill. 368.) Here the abstract is insufficient to show that the title is clouded or that the forfeiture was properly declared.

The decree dismissing the cross-bill will be affirmed and the decree granting specific performance under the original bill will be reversed and the cause will be remanded, with directions to dismiss the original bill for want of equity. The appellants will pay one-third and the appellee two-thirds of the costs of this court.

*Reversed in part and remanded, with directions.*