(No. 30148.—

JAMES E. BROWN *et al.*, Appellants, *vs.* ANDREW JURCZAK *et al.*, Appellees.

*Opinion filed September 18, 1947.*

FRANKLIN D. TRUEBLOOD, of Chicago, for appellants.

MICHAEL A. GERRARD, of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, James E. and Elizabeth M. Brown, filed their amended complaint in the superior court of Cook county against the defendants, Andrew and Filomena Jurczak, seeking specific performance of a contract to sell real estate. Defendants' motion to strike was sustained, plaintiffs elected to abide by their pleading and judgment was

rendered in favor of defendants and against plaintiffs. The latter prosecute this appeal, a freehold being necessarily involved. *Espadron* v. *Davis,* 385 Ill. 304; *Herrick* v. *Lain,* 375 Ill. 569.

From the complaint it appears that on and prior to July 21, 1945, defendants owned a parcel, of real estate in Van Buren county, in the State of Michigan, containing approximately 100 acres. On the day named, plaintiff James E. Brown entered into a written contract with defendants to purchase the real estate, together with the buildings and improvements and, also, items of personal property, including a tractor, a plow, a mower and a cultivator and seven boats. Of the purchase price of $20,000, Brown agreed to, and did, pay $1000 upon the execution of the contract, an additional $1000 on August 2, 1945, and agreed to pay $8000 in cash or by certified check upon the delivery of a deed containing the usual covenants of warranty, and to assume a mortgage indebtedness of $10,000, payable on or before five years, principal payments of $300 to be made semi-annually, with interest at the rate of five per cent. The parties provided for the delivery of a deed on or before October 1, 1945, at the office of an attorney, David Anderson, in Paw Paw, Michigan. Possession was to be given at the time of conveying the property.

By their amended complaint, plaintiffs allege that Brown made the second payment of $1000 on August 2, 1945; that he was, however, unable to raise an additional $8000 by October 1, 1945, without incurring serious financial loss, although well able to meet this obligation at a later date; that, upon explaining his difficulty to defendants, they expressed their willingness to extend the time beyond October 1, 1945, for consummating the transaction; that, on October 13, 1945, at their urgent request, Brown gave to defendants his personal check for $4000, requesting it be held for a short period to enable him to

raise the money to meet the check and that, on the same day, namely, October 13, 1945, the parties, by a separate memorandum, extended the time for completing the transaction by delivery of a deed and payment of the remaining $4000 to January 15, 1946. This memorandum captioned, "Escrow Agreement," states that defendants had executed a deed and that Brown and his wife had (1) executed real estate and chattel mortgages to secure the payment of $10,000, the real estate mortgage covering the land in controversy, and (2) given Brown's check for $4000 to apply on the total purchase price of $20,000. The escrow agreement recites the deposit of the deed, mortgages and ten notes secured by the real-estate mortgage with the Home State Bank of Lawrence, Michigan, to be held on the following conditions: (1) defendants to have ten days from October 13, 1945, to present Brown's check for payment and, in the event of its dishonor within this period, "then first parties [defendants] may recall all of said papers from said bank and the said deal is thereby abandoned and the $2,000 forfeited to first parties and none of the parties further bound in any way by said transaction;" (2) plaintiffs to pay, on or before January 15, 1946, the balance of $4000, either to the bank or to Jurczak personally and, upon payment being made, the papers deposited to be delivered to defendants' attorney for recording and delivery, thereby fully consummating the deal, but upon plaintiff's failure to make the payment, defendants "may likewise recall all of said papers from said bank and the said deal is likewise thereby abandoned and the payments made forfeited to first parties and none of the parties further bound in any way by said transaction;" and (3) defendants to present Brown's personal check in the usual course of business not later than October 16, 1945, affording ample time for it to clear and, in the event of failure so to do, be deemed to have accepted the check as payment of the amount thereof. Elizabeth

M. Brown signed the escrow agreement although she was not a party to the contract of July 21, 1945.

Plaintiffs allege that, owing to circumstances beyond his control, Brown was unable to raise the money to pay the check for $4000 within the ten days prescribed, whereupon defendants withdrew from the bank not only the warranty deed but, also, the notes and mortgage; that defendants did not at any time declare a forfeiture, abandonment or rescission of the contract; that, on the contrary, on October 29, 1945, defendants' attorney, acting within the scope of his authority, wrote Brown a letter, stating that although defendants had withdrawn the documents described from the bank, he was authorized to say that defendants would give them, plaintiffs, until November 15, 1945, to pay the entire sum of $8000, thereby waiving any rights defendants may have previously enjoyed to declare Brown in default. The letter from Anderson to Brown states that since the latter's check for $4000 was not honored, he advised Jurczak "to proceed under his contract and withdraw all papers from the Lawrence bank and declare the deal at an end and he did so." Anderson's letter states, further, that Jurczak had authorized him to say to Brown, without binding himself to any reinstatement of the contract, "unless you [Brown] accept this proposition, that if you will come across with cash or certified check to the amount of $8,000 he will still give you the deed and take the mortgage provided for in the original contract. You may have until November 15th to acquiesce or comply with this suggestion."

Additional allegations of the amended complaint are that because of others failing to keep their commitments to him, Brown was unable to raise the balance of the purchase price by November 15, 1945, without undue hardship; that, on the day named, he informed defendants he had been promised the money in early payment of a debt owed him by a third person, and was willing to pay interest

on the sum at the legal rate during the delay; that while negotiations for a further extension continued, Brown made every effort to collect the debt owing him and, on January 13, 1946, defendants' attorney stated to plaintiffs that, if within thirty days from January 15, 1946, they would place in his hands a certified check for the remaining sum of $8000, together with interest for four-and-a-half months at five per cent interest [$150] to compensate defendants for the delay, he would advise defendants to accept the sum as payment in full; that, pursuant to this conversation, plaintiffs, on February 13, 1946, mailed a certified check for $8150 to Anderson who later informed them he had received the check and advised defendants to close the deal. Plaintiffs also allege that, on February 16, 1946, Jurczak telephoned Brown, declaring the payment to his attorney was satisfactory except that he, Jurczak, required other damages, in addition to the interest on the money, before giving Brown a deed to the property; that, shortly thereafter, Jurczak presented to Brown a list of his alleged damages in the sum of $1932.76, demanding payment before delivering a deed. The list entitled "Expenses connected with farm from October 1, 1945 to February 23, 1946" includes such items as eleven trips to the farm at $15 per trip; "Interest on $10,000 mortgage for six months," $250; "Interest on $8,000.00 for 5 months at 5%," $166.70; "Prepayment for 6 months," $300, and "Sacrificed my business with loss of about $1000 which leaves me without employment for indefinite period of time —loss at least 800.00." Following the total of $1932.76 appears the notation, "Mr. Anderson's additional fee ———." At this juncture, it may be observed that although six months' interest and a prepayment for six months on plaintiffs' notes were claimed, only four months had passed since their execution, and neither interest nor prepayment was then due. The amended complaint charges that the claim for damages was without any basis in the law, friv-

olous and unconscionable, and rendered for the sole purpose of extorting additional sums from plaintiffs, and that they refused to pay the alleged claim for damages other than defendants' damages by way of interest for the delay in paying the sum of $8000, as requested and computed by their own attorney.

Accordingly, plaintiffs alleged that although they had fully performed the covenants required to be performed under the contract of July 21, 1945, had paid all sums due and owing defendants, including interest for delay in making the last payment, the latter had refused to deliver a deed to the property, as required by the original contract; that, two days after filing their complaint seeking specific performance of the contract, defendants' attorney wrote Brown a letter returning the certified check for $8150 saying, "As you and Mrs. Brown did not show up last Saturday, February 23rd, and as I did not receive any additional remittance during the week preceding, * * * I am assuming that the said deal is all off and I do not believe I should any longer retain in my possession the check which you sent me with your letter of February 13, 1946." According to plaintiffs, the "additional remittance" referred to "defendants' alleged claim for additional damages." Plaintiffs alleged, further, that ever since the contract of July 21, 1945, was executed, defendants had been in the exclusive possession of the property; that, although the covenants of the agreement with respect to the (1) final payment of $8000, (2) delivery of the deed, and (3) possession of the premises are mutual and dependent covenants, at no time have defendants tendered plaintiffs a deed, offered to return the sum of $2000 paid on the contract in July and August, 1945, or the notes for $10,000 recovered from the Home State Bank of Lawrence, Michigan, nor tendered possession of the property to them as required by the contract of July 21, 1945.

Concluding allegations are that the acts of defendants amounted, in legal contemplation, to a waiver of any right in them to take advantage of plaintiffs' delay in making the last payment under the contract, as well as the terms of the memorandum of October 13, 1945; that defendants' alleged claim for damages from October 1, 1945, to February 23, 1946, constitutes, in law, a ratification of the original contract and, further, that defendants have at no time given plaintiffs any notice of forfeiture, abandonment or rescission. Finally, plaintiffs allege that Brown is the owner, in equity, of the property and therefore entitled to a warranty deed conveying an unencumbered legal title to him; that he is holding the certified check for $8150 for the use and benefit of defendants; that he tenders the check, and any additional sums found due and owing by him to them, and that he and his wife offer to make all future payments required by the notes held by defendants.

Defendants' motion to strike the amended complaint averred that defaults, if any, were made by plaintiffs; that the complaint alleges default on the part of plaintiffs and performance by defendants "and predicate such actions beyond plaintiffs' contract which are not chargeable to the defendants and do not set forth grounds for specific performance;" that plaintiff Brown attempts to bind defendants with an unauthorized act of an attorney; that the complaint alleges a counteroffer by defendants after default by plaintiff Brown which was not accepted by him; that no contract was entered into between the parties after the defaults alleged; that plaintiffs did not comply with the escrow agreement and, further, that plaintiffs do not allege payment of the purchase money within the time agreed upon by the parties. Finding that plaintiffs' amended complaint did not state a case for specific performance, the chancellor sustained defendants' motion to strike, and dis-

missed the action for the want of equity. This appeal followed.

To obtain a reversal of the decree rendered against them, plaintiffs contend that their amended complaint stated a cause of action. On the other hand, defendants maintain that it did not state a cause of action and was, in consequence, properly dismissed for the want of equity. In an action for specific performance, the burden is on the plaintiff to show that he was ready, able and willing to perform, and it is incumbent upon him to tender performance unless circumstances relieve him of this necessity. (*Lanski* v. *Chicago Title and Trust Co.* 324 Ill. 367.) To entitle a purchaser to demand a deed and maintain an action for specific performance, it is necessary that he be ready and offer to pay any sum found to be due or still unpaid and to comply with the contract on his part. (*Macy* v. *Brown,* 326 Ill. 556.) Where a contract for the purchase of land provides that the vendor may declare a forfeiture in case of nonpayment of the purchase money, a declaration of forfeiture after such default will put an end to the interest of the purchaser, and where time is of the essence of the contract the vendor is at liberty to act as if the contract had ceased. (*Lanski* v. *Chicago Title and Trust Co.* 324 Ill. 367.) The purpose of time limitations in a contract for a conveyance is to avoid speculation by either the vendor or vendee on the rise or fall of the value of the property before choosing to perform, and where time is made the essence of the contract it is necessary for one seeking specific performance to show that he has done everything required of him within the time specified. *Kennedy* v. *Wilbur,* 335 Ill. 33.

Plaintiffs insist that time was not of the essence of either the contract of sale or of the escrow agreement. From plaintiffs' complaint, it appears that he did not make the payment of $8000 on or before October 1, 1945, the date specified in the contract of July 21, 1945. Although

Brown was thus in default, the complaint affirmatively discloses that defendants did not treat this default as terminating the contract but, instead, proceeded with negotiations leading to the execution of the escrow agreement of October 13, 1945. Long ago, this court, in *Murphy* v. *Lockwood,* 21 Ill. 610, observed, "Time does not seem to have been regarded by the parties, as of the essence of this contract, and we must take it, as they regarded it. Parties may make time material, and so it may be considered as material, though no part of the contract itself. * * * Time not having been made of the essence of this contract by the express stipulation of the parties themselves, nor by the nature of the contract itself, or from the conduct and circumstances of the parties and no gross *laches* or vexatious delay changing the relative situation of the parties, or one of them, affecting the character or justice of the contract, courts of equity have not hesitated to decree a specific performance." Time not having been expressly made of the essence of either the contract or the escrow agreement in the case at bar, and intention to make it so not being clearly manifested, the question whether time was of the essence is one of fact.

Defendants maintain, however, that although the escrow agreement does not specifically declare "time is of the essence," the language employed is sufficient, in legal effect, to make time of the essence. Defendants point to the provision in the original contract that "Any expense accrued on this deal must be deducted from $1,000—deposit—if sale not culminated—and deposit forfeited by purchaser." From this, defendants argue that "Culmination means completion as contracted for" and that they could, on October 1, 1945, "have pocketed the deposit." A sufficient answer is that defendants, for reasons best known to themselves, did not elect so to do. Referring to the escrow agreement, reliance is placed upon the provisions to the effect that if Brown's personal check failed to clear in the time

prescribed, defendants "may recall all of said papers from said bank and the said deal is thereby abandoned and the $2,000.00 forfeited to first parties and none of the parties further bound in any way by said transaaction." Defendants also refer to the sentence following the provision for paying the balance of $4,000 on or before January 15, 1946, "If this payment is not so made then said first parties may likewise recall all of said papers from said bank and the said deal is likewise thereby abandoned and the payments made forfeited to first parties and none of the parties further bound in any way by said transaction." The language first quoted is permissive, granting defendants the privilege of recalling the papers from the bank, and, if so recalled, the deal to be abandoned and the $2000 forfeited to them. Similarly, the language used concerning the payment of $4000 on Janauary 15, 1946, is permissive, the abandonment of the transaction and forfeiture of the payments made being dependent upon the exercise of defendants' privilege of recalling the papers.

The provisions of the escrow agreement invoked by defendants were not self-executing. If plaintiffs were in default in their payments and defendants did not see fit to exercise the privilege reserved to them by the contract and the escrow agreement to declare a forfeiture, the lapse of time, alone, would not put an end to the contract and the agreement. A default in payment is required to be followed by some act of the vendor indicating his election to consider the contract at an end before it will be terminated. (*Peck* v. *Brighton Co.* 69 Ill. 200; *Chrisman* v. *Miller*, 21 Ill. 226; *Muirhead* v. *McCullough*, 234 Mich. 52; *Murphy* v. *McIntyre*, 152 Mich. 591; *Peters* v. *Canfield*, 74 Mich. 498; *Converse* v. *Blumrich*, 14 Mich. 109.) Where the consideration for property is to be paid in partial payments at definite times fixed by the contract and the parties have treated the time clause as waived with

respect to some of the payments, the vendor, to avail himself of the right to forfeiture for failure to make subsequent payments on time, must give reasonable, definite and specific notice of his changed intention. (*Boardman v. Bubert,* 325 Ill. 38; *Watson* v. *White,* 152 Ill. 364.) It cannot be said, as a matter of law, that the contract was terminated upon plaintiff's default. Defendants rely upon the letter of their attorney to Brown, "I advised Mr. Jurczak to proceed under his contract and withdraw all papers from the Lawrence bank and declare the deal at and end and he did so." The argument is advanced that the quoted statement discloses plaintiffs were made aware by the attorney that Jurczak and his wife had declared a forfeiture, conformably to the escrow agreement, and had withdrawn all papers. We observe, in this regard, that the letter did not even assume to be on behalf of one of the vendors, namely, Filomena Jurczak and that, on the other hand, it was sent only to Brown, one of the signers of the escrow agreement, and not to Brown and his wife. Plaintiffs alleged in their complaint that defendants had at no time ever given them, or either of them, any notice of forfeiture, abandonment or rescission. A declaration of forfeiture must be clear and free from ambiguity, conveying an unquestionable purpose to insist upon the accrual of a forfeiture. (*Sanitary District of Chicago* v. *Chicago Title and Trust Co.* 278 Ill. 529; *Maday* v. *Roth,* 160 Mich. 289.) Assuming that defendants enjoyed the right to declare a forfeiture, a question of fact remained as to whether they actually declared a forfeiture of plaintiffs' rights under the contract of sale and the escrow agreement.

Plaintiffs contend, further, that defendants waived any rights they might otherwise have enjoyed to declare a forfeiture by (1) negotiations to extend the time for payment; (2) failure to return the deposit of $2000, the promissory notes, the mortgage for $10,000, and the money

plaintiffs paid for certain farm equipment, and (3) the demand of additional damages for the delay. The law is clear that provisions for forfeiture may be waived by the person entitled to enforce them, either expressly or by implication. (13 Corpus Juris Secondum, Contracts, sec. 409.) The law does not favor forfeitures. It is true, of course, that the law affords a vendor the benefit of remedies for defaults of a vendee, including forfeiture, but the vendor may waive such remedies, expressly or by implication. (*Watson* v. *White*, 152 Ill. 364; *Zadigian* v. *Gard*, 223 Mich. 147.) As this court observed in *Eaton* v. *Schneider*, 185 Ill. 508, "Forfeiture is a harsh remedy, and in equity must yield to the principle of compensation, where fair dealing and good conscience seem to so demand."

Plaintiffs' pleading admits of the conclusion that defendants did not declare a forfeiture when payment was due and not made and, further, that by their affirmative acts they may have waived any right they might otherwise have enjoyed to declare a forfeiture upon proper notice. The complaint discloses a contract of sale, executed on July 21, 1945, under which Brown made initial payments of $2000 and agreed to pay $8000 additional on October 1, 1945; that, on the day last named, Jurczak expressed a willingness to extend the time for completing the transaction; that, on October 13, 1945, the parties entered into an escrow agreement, Brown giving Jurczak a check for $4000 to hold a few days, and agreeing to pay a second $4000 by January 15, 1946; that, on October 29, 1945, the check for $4000 not having been paid, Jurczak's attorney assumed to extend the time until November 15, 1945, provided Brown would pay the remaining $4000 by the same day; that, on November 15, 1945, Brown informed Jurczak of his inability to make the payments, stating that he would pay interest on the sum owing at the legal rate for the delay; that Jurczak did not object; that negotia-

tions continued until January 13, 1946, when a conference between Jurczak's attorney and Brown resulted in keeping the negotiations open another month; that, on February 13, 1946, Brown tendered Jurczak's attorney a certified check for $8150, representing principal and interest; that, three days later, Jurczak advised his attorney the check was satisfactory, except he was demanding additional damages and that, a few days thereafter, Jurczak submitted his claim for additional damages to Brown and, upon the latter's refusal to accept the check for $8150, this action was instituted. On February 25, 1946, after plaintiffs sued defendants, the check was returned to Brown by Jurczak's attorney with the notation, "I am assuming the deal is all off." The facts recounted present at least a question of fact as to whether defendants waived their right to insist upon strict performance of the contract and, in particular, to declare a forfeiture.

It appears from the pleadings that defendants did not offer to return to plaintiffs the $2000 paid, their negotiable promissory notes, the mortgage securing them, or the money plaintiffs paid for the farm equipment. Any attempted forfeiture or rescission, by notice, of a land contract may be waived and is waived by subsequent acts clearly inconsistent with an intention to exercise the right. (*Krell* v. *Cohen,* 214 Mich. 590.) In an analogous case, *Comstock* v. *Brosseau,* 65 Ill. 39, this court observed, "He still held the unmatured notes and had not previously offered to surrender them. He could not rightfully declare a forfeiture and at the same time retain these negotiable securities." In *Miles* v. *Hemenway,* 59 Ore. 318, the purchaser, unable to meet the original payments, entered into a supplemental agreement whereby he deposited a quitclaim deed in escrow, along with the seller's warranty deed. The parties agreed that if the purchaser failed to make his payments, the seller was to be given both deeds.

Holding that the arrangement was merely one for additional security, and that the supplemental agreement was without consideration, the court said: "In legal contemplation, Hemenway had not surrendered the notes, and, conceding that he had a right at 12 o'clock noon on October 11th to declare a forfeiture, his failure to surrender the notes would be a waiver of his right to declare a forfeiture at that time. He could not afterwards insist upon a forfeiture without giving reasonable notice to Miles and making a new demand for payment of the balance due on the purchase price." Again, in *Gaughen v. Kerr,* 99 Iowa 214, these pertinent observations were made, "But it is nowhere provided that the party may declare a forfeiture and at the same time hold the notes of the purchaser. If he has the right to hold the notes of the purchaser, he would have the right to collect them. The notes are negotiable on their face, and would pass by indorsement; and if the defendant can declare a forfeiture of the contract, and hold the notes himself, I can see no reason why he could not do so if the notes were transferred to an innocent holder. * * * Where the vendor insists on a strict forfeiture, the vendee should not be subjected to the hazard of a probable suit on the unpaid notes, but vendor should be required to relieve the purchaser from his obligation on the notes by delivering them up as a part of the declaration of forfeiture."

We note that the chancellor offered plaintiffs permission to amend their pleading to ask for cancellation of the notes and the mortgage securing them. No duty rested upon plaintiffs to seek cancellation of the notes and mortgage but, instead, the duty had long since devolved upon defendants of returning the notes and mortgage to plaintiffs to conform to their theory of a forfeiture.

Jurczak presented Brown with a detailed list of farm "expenses" from October 1, 1945, to February 23, 1946,

which he demanded Brown pay. This list, consisting of forty-three items, may well have constituted a ratification of the contract and, in any event, tends to demonstrate that there had been no forfeiture. Defendants now maintain that they made a counteroffer asking, in addition to the $8000 and interest thereon, damages, as described in the list of "expenses," aggregating $1932.76, and that when plaintiffs did not accept the counteroffer the negotiations were then terminated. Assuredly, the demand for payment of additional damages in the amount stated was not an offer by defendants to enter into a new contract based upon a new consideration. Essential elements of a new offer to enter into a contract calling for plaintiffs' acceptance are simply not present.

Plaintiffs' default in making payments required by the contract of July 21, 1945, and the supplemental, or escrow, agreement of October 13, 1945, could be, and may have been, waived. Since the provisions granting defendants the privilege of abandoning the transaction and retaining the sum of $2000 paid under the contract were not self-executing, the defendants could have exercised their right to declare a forfeiture, or, on the other hand, could have waived their right. Determination of these and other questions of fact properly presented by plaintiffs' pleading required an answer by defendants. This being so, the challenged decree cannot stand.

The decree of the superior court of Cook county is reversed and the cause remanded, with direction to overrule defendants' motion to strike plaintiffs' amended complaint and to grant leave to defendants to answer.

*Reversed and remanded, with directions.*