(No. 33443.—)

THEODORE LIVINGSTON et al., Appellants, vs. SID MEYERS, Appellee.

*Opinion filed September 23, 1955.*

Brown, Dashow & Ziedman, of Chicago, (Albert Langeluttig, and A. A. Ziedman, of counsel,) for appellants.

Cassius A. Scranton, of Chicago, for appellee.

Mr. Justice Davis delivered the opinion of the court:

Plaintiffs-appellants appeal directly to this court from a decree of the circuit court of Cook County dismissing for want of equity their complaint against defendant-appellee for specific performance of a contract for purchase of real estate by defendant from plaintiffs. A freehold being directly involved, the appeal properly comes direct to this court. *Sandra Frocks* v. *Ziff*, 397 Ill. 497.

The complaint alleges that plaintiffs and defendant entered into a contract on March 12, 1954, for the sale by plaintiffs to defendant of two certain lots; that on May 5, 1954, plaintiffs tendered to defendant a merchantable abstract of title thereto; that on May 13, 1954, defendant's attorney presented to plaintiffs his title opinion, based on the abstract, that two trust deeds, one on each lot, should be released or removed from the records be-

cause the contract made no provision for the title to be subject to them; that the abstract of title showed two trust deeds, each dated January 6, 1930, executed by Charles B. Ramsey and wife, as grantors, to Chicago Title and Trust Company, as trustee, duly recorded January 8, 1930, each given to secure the payment of a note of the grantors of even date in the sum of $1500, due three years after date; that the notes secured by the trust deed were barred by section 11 of the Limitations Act and the liens of the trust deeds were declared null and void by section 11(b) of the Limitations Act prior to the making of this agreement; that plaintiffs tendered to defendant a warranty deed to the premises in question and defendant refused to accept the deed and pay the balance of the purchase price due under the agreement. The complaint prayed specific performance of the agreement and that defendant be required to accept a deed to the property and to pay the balance of the purchase price due.

The defendant's motion to dismiss the complaint for failure to state a cause of action was based on the ground that sections 11 and 11(b) of the Limitations Act referred to in the complaint were not sufficient in law or equity to remove the lien of said trust deeds, or to bar action thereon, or to require defendant to accept the title with the trust deeds unremoved or unreleased of record.

The trial court granted defendant's motion and, the plaintiffs electing to stand on their complaint, entered a decree dismissing the suit for want of equity.

The sole error assigned as a basis for reversal is the holding of the trial court that section 11(b) of the Limitations Act does not render the trust deeds null and void and no longer liens upon the premises.

In 1941, the General Assembly of the State of Illinois repealed section 11(a) and enacted section 11(b) of the Limitations Act, (Ill. Rev. Stat. 1953, chap. 83, par. 11(b),) which provides as follows:

"(a) The lien of every mortgage, trust deed in the nature of a mortgage, and vendor's lien, the due date of which is stated upon the face, or ascertainable from the written terms thereof, filed for record either before or after the effective date of this Amendatory Act, which has not ceased by limitation before the effective date of this Amendatory Act, shall cease by limitation after the expiration of twenty years from the time the last payment on such mortgage, trust deed in the nature of a mortgage, or vendor's lien became or becomes due upon its face and according to its written terms, unless the owner of such mortgage or vendor's lien, or the owner or trustee of such trust deed in the nature of a mortgage either

"(1) Before the effective date of this Amendatory Act, and within such twenty year period has filed or caused to be filed for record an extension agreement showing the time for which the payment of the indebtedness is extended, and the amount remaining unpaid on such indebtedness; or

"(2) After the effective date of this Amendatory Act, and within such twenty-year period or within one year after the effective date of this Amendatory Act, provided the above mentioned due date of the instrument was more than nineteen years before the effective date of this Amendatory Act, files or causes to be filed for record, either (1) an affidavit executed by himself or by some person on his behalf, stating the amount or amounts claimed to be unpaid on the indebtedness secured by such mortgage, trust deed in the nature of a mortgage, or vendor's lien; or (2) an extension agreement executed as hereinafter provided:

"(b) The lien of every mortgage, trust deed in the nature of a mortgage, and vendor's lien, in which no due date is stated upon the face, or is ascertainable from the written terms thereof, shall cease by limitation after the expiration of thirty years from the date of the instrument creating the lien, unless the owner of such mortgage or

vendor's lien, or the owner or trustee of such trust deed in the nature of a mortgage, within such thirty year period or within one year after the effective date of this Amendatory Act, provided the date of the instrument was more than twenty-nine years before the effective date of this Amendatory Act files or causes to be filed for record either (1) an affidavit executed by himself or by some person on his behalf, stating the amount or amounts claimed to be unpaid on the indebtedness secured by such mortgage, trust deed in the nature of a mortgage, or vendor's lien; or (2) an extension agreement executed as hereinafter provided.

"The filing for record of an affidavit provided for by this section, within such twenty or thirty year period or one year period, as the case may be, shall extend the lien for a period of ten years after the date ʾon which such lien would cease if neither an affidavit or extension agreement were filed, and no more, and a subsequent affidavit filed within the last ten year period of the lien, as extended, shall extend the lien for an additional ten year period, and no more, but successive affidavits may be filed, each extending the lien ten years.

"The filing for record of an extension agreement within such twenty or thirty year period or one year period, as the case may be, whether before or after the effective date of this Amendatory Act, shall extend the lien for ten years from the date the final payment becomes due under such extension agreement, and no more, but subsequent extension agreements filed before the lien, as extended, ceases, shall extend the lien for an additional ten year period from the date the final payment becomes due under such extension agreement, and no more: Provided, that the filing of an extension agreement shall not be construed in any way to cause the lien to cease before it would cease if neither an extension agreement nor an affidavit were filed. Affidavits may be followed by extension agreements, and extension agreements may be followed by affidavits.

"An extension agreement executed after the effective date of this Amendatory Act, to be effective for the purpose of continuing the lien of any mortgage, trust deed in the nature of a mortgage, or vendor's lien shall show the time for which the payment of the indebtedness secured thereby is extended and the amount remaining unpaid on such indebtedness, and shall be executed and acknowledged by the owner of the mortgage, trust deed in the nature of a mortgage, or vendor's lien, or someone on his behalf, and by one or more persons representing himself or themselves to be the then owners of the real estate. The affidavit or extension agreement shall be effective only as to the lands within the county or counties wherein such affidavit or extension agreement, or a copy thereof, is filed for record.

"When a corporation is the owner or trustee of any such mortgage, trust deed in the nature of a mortgage, or vendor's lien, the affidavit herein described shall be deemed effective for all purposes under this section when it has been executed by any officer of such corporation, or by any person authorized by the corporation to execute such affidavit.

"The section shall apply to mortgages, trust deeds in the nature of mortgages, and vendor's liens on both registered and unregistered lands. 'Filed for record' or 'the filing for record' as used in this Act means filing in the office of the Recorder of Deeds in the county in which the lands are situated, if such lands are unregistered, or in the office of the Registrar of Titles for such county, if such lands are registered. Nothing herein contained shall be construed to revive the lien of any such instrument which has expired by limitation before the effective date of this Amendatory Act. As amended by act approved July 21, 1947. L. 1947, p. 1178."

The contract for deed here in question provided that the vendors should convey to the buyer a good title, and, as evidence thereof, deliver to vendee a merchantable ab-

stract showing record title in the vendors, subject only to certain exceptions which did not include the trust deeds in question. The law is well settled that under such a contract a court of chancery will not force upon the vendee a title clouded with substantial defects, or one that a purchaser may be required to engage in litigation to defend against third parties not before the court, or one that he cannot readily dispose of by reason of defects therein. All the defendant is bound to show to defeat a suit for specific performance is that the title which the vendor is prepared to tender him is doubtful in character. *Hayne* v. *Fenton*, 321 Ill. 442; *Cobb* v. *Willrett*, 313 Ill. 92; *Weberpals* v. *Jenny*, 300 Ill. 145; *Baker* v. *Baker*, 284 Ill. 537; *Geithman* v. *Eichler*, 265 Ill. 579; *Smith* v. *Hunter*, 241 Ill. 514.

Such being the principles controlling the right of plaintiffs to specific performance, the question is squarely presented to this court of whether or not the legislature in enacting section 11(b) of the Limitations Act terminated the lien of the trust deeds under the factual situation here before us. Did the trust deeds constitute substantial defects rendering the title doubtful in character, exposing the vendee to litigation against third parties, and impairing the marketability of the property?

Section 11 of the Limitations Act (Ill. Rev. Stat. 1953, chap. 83, par. 11) by its terms bars an action, or a sale, to foreclose any mortgage or trust deed in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues. However, such section must be construed with section 16 of the Limitations Act applicable to promissory notes (Ill. Rev. Stat. 1953, chap. 83, par. 17) and a mortgage will not be barred until the debt is barred. (*Kraft* v. *Holzmann*, 206 Ill. 548.) Under the decision in the *Kraft case*, the lien of a mortgage, etc., was kept alive as long as the indebtedness secured thereby was continued in force, without the necessity of

any recording of the extension agreement. By the terms of section 16 of the Limitations Act and under numerous decisions of this court there have been various means established by which the secured indebtedness, and thereby the lien, were continued in force without the recording of anything further of record.

Also, statutory provisions exist which toll the operation of the Limitations Act as to mortgages under certain circumstances for certain periods, such as absence from the State, infancy, insanity, death or imprisonment. Ill. Rev. Stat. 1953, chap. 83, pars. 19, 20, 22.

Defendant's position is based largely on the argument that the foregoing principles apply to section 11(b) of the Limitations Act and that thereby the trust deeds in question cast doubt on the title and expose him to the expense of defending possible foreclosure proceedings by a trustee who is not a party to this suit, whose secured debt is not barred, and whose lien therefore may still be effective.

However, the object of construing a statute is to ascertain and give effect to the legislative intent, and in so doing it is proper to consider the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in such former law which were intended to be cured or remedied. *Scofield* v. *Board of Education,* 411 Ill. 11; *Anderson* v. *City of Park Ridge,* 396 Ill. 235; *People* v. *Fox,* 269 Ill. 300.

Prior to the adoption of section 11(b) as an amendment to the Limitations Act in 1941, many properties in the State had become encumbered by trust deeds and mortgages unreleased of record. It was difficult if not impossible in many instances to obtain releases of these instruments, and litigation to remove such purported liens as clouds on title was expensive and time consuming. As a result, title to many properties were not merchantable and thereby removed from the flow of commerce though needed in our social, economic and commercial life. The interpretation

sought by defendants in effect would result in no practical change in existing law as to mortgage liens. It must be presumed that in adopting this amendment the legislature intended to make some change in existing law. (*Lindley* v. *Murphy*, 387 Ill. 506.) The clear language of the statute indicates that it was enacted to terminate the lien of a trust deed and mortgage against real estate titles unless the mortgagee preserved his lien within a specified period of time by affirmative action on his part. This section is not in the ordinary language of a limitation statute whereby "no action shall be brought unless * * *." Rather it provides that the lien of trust deeds and mortgages which show on their face the due dates, as well as those which are silent in respect thereto, shall "cease by limitation," and permits the preservation of such lien beyond the specified period of time by either a recorded extension agreement or recorded affidavit of the mortgagee or trustee alone. The clearly expressed intent of the legislature in adopting section 11(b) was to remedy the condition of the law as it existed with reference to mortgage and trust deed liens and to bar the enforcement of such liens except as they were preserved of record as therein required, without regard to the continued existence of the secured debt.

The soundness of this conclusion becomes apparent when considered in the light of various circumstances under which the ten year limitation on foreclosure imposed by section 11 may be tolled. In the event of a mortgagor's absence from the State, foreclosure of the lien may be had by publication under the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, sec. 138.) Absence of the mortgagee from the State does not prevent him from filing his simple affidavit under the statute. If a mortgagor dies on the last day of the ten-year limitation period and there is no administration on his estate, the mortgagee would have seven further years in which to foreclose, or a total of seventeen years. Under section

11(b) the lien would not be barred for another three years at least.

In the event of infancy or mental illness of a mortgage holder, it must be presumed that the law will be followed, a guardian or conservator of such incompetent's estate appointed, and the property interests of such incompetent protected in the performance of such guardian or conservator's legal duty. Under section 11(b) such guardian or conservator would have the authority to file the required affidavit in behalf of his ward. The lien of an imprisoned mortgage holder can likewise be preserved by the filing of the required affidavit on his behalf by any authorized agent. It must be presumed that people will know the law and abide by its requirements to protect their property interests.

The same reasoning must logically lead to and reach the same result as to all other situations suggested by the defendants as keeping the debt alive or tolling the ten-year limitation statute. Even as to the Soldiers' and Sailors' Civil Relief Act (U.S.C.A., Title 50, App. Sec. 510-525) it is our opinion that section 11(b) of the Limitations Act is not affected thereby. The purpose of such Federal act was to suspend enforcement of civil liabilities against servicemen. Such act refers only to the time of bringing or instituting action by or against a serviceman. Section 11(b) of the Limitations Act does not limit the bringing of an action but in effect limits the length of existence of a property right in the absence of affirmative action. On practical consideration, no reason offers itself why the Federal act should qualify the terms of section 11(b) since only a simple affidavit is required to be filed by the mortgage holder or his agent.

Appellee further argues that there is nothing in the record to indicate whether the owner of the indebtedness secured by the trust deeds in question is in possession of the premises, and that since the Limitations Act does not

run against the owner of indebtedness in possession the trial court was correct in its decision. The statement of this legal principle is correct. (*Miller* v. *Frederick's Brewing Co.* 405 Ill. 591.) In that case the note was due in 1928 and suit was instituted in 1947. In answer to the contention there made that the trust deed was barred by section 11(b), the court observed that the twenty-year limitation period under section 11(b) had not expired at the time appellant received his title. However, the argument concerning questions of possession is a *non sequitur* in this case. No objection to title was raised by appellee's counsel because of any facts concerning possession of the property in question, but solely on the basis of alleged defects in the abstract of title. It is hornbook law that a purchaser is bound to inquire by what right or title an occupant holds (*McDonnell* v. *Holden,* 352 Ill. 362,) that an abstract of title does not purport to reflect any matters concerning possession of property, and that a vendee must satisfy himself by personal investigation as to the rights of all parties in possession as well as investigate the record title. The question presented here is one of record title only, whether the lien of trust deeds has ceased as against a vendee of the record owner by failure of the owner of the trust deeds or trustee to extend the lien of record pursuant to section 11(b) of the Limitations Act. If parties in possession have any adverse rights, that is a question for defendant to determine at his peril and object to on that basis. The possibility of adverse possessory interests preventing the vendor conveying a good title does not furnish the basis of holding an abstract of title as such unmerchantable or doubtful.

The further argument of appellee that if section 11(b) takes away a mortgagee's right to possession and his title after condition broken it may be unconstitutional is likewise a *non sequitur*. Section 11(b) does not purport to

take away any title based on a mortgagee's possession, but rather it terminates any right of lien by virtue of a recorded trust deed or mortgage if it is not preserved as therein specified. Any right or title of a mortgagee in possession is dependent on the facts and circumstances of his entry into possession and not the state of the record title. Section 11(b) could under no circumstances be the operative fact of vesting or divesting title in a mortgagee, since it only determines whether a lien does or does not exist. Whether or not title is or was ever vested in a mortgagee in possession depends on the circumstances surrounding the mortgagee's entry into possession—if he had a lien at such time he entered of right and acquired title; if he had no lien at such time, he has no title. Thus 11(b) does not operate to vest or divest title and could not be unconstitutional on such alleged ground.

No doubt a bill to quiet title or to remove a cloud could have been maintained prior to the enactment of section 11(b) to remove the apparent lien of a mortgage or trust deed under the law as it then existed. However the legislative intent in enacting section 11(b) is clear-cut and evident, and from what has heretofore been said was effective to terminate the liens of mortgages and trust deeds at the ends of the periods and under the conditions therein specified. The liens of the trust deeds in question were rendered entirely void by section 11(b) of the Limitations Act prior to the time the plaintiffs and defendant entered into the contract of sale. The title to the property in question was not doubtful in character by reason of said trust deeds because of the operation of section 11(b), they did not constitute substantial defects in title, and the defendant could not be required to engage in litigation to defend his title against third persons not before the court claiming under said unreleased trust deeds. The defendant should be required to specifically perform the contract upon which suit was brought on the basis of facts alleged in the com-

plaint. The trial court was in error in granting defendant's motion to dismiss the complaint and should have required the defendant to answer or otherwise plead thereto.

The decree of the circuit court of Cook County is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*