(No. 35594.—

SAM LANG, Appellant, *vs.* DOROTHY PARKS *et al.*, Appellees.

*Opinion filed March 31, 1960.*

Clarence J. Hayden, of Manteno, for appellant.

Stouder & Stouder, of Kankakee, for appellees.

Mr. Justice Daily delivered the opinion of the court:

Complaint was filed in the circuit court of Kankakee County by Sam Lang, vendor under a real-estate contract, against Dorothy Parks, the vendee, (herein referred to as defendant,) to enjoin the defendant from interfering with plaintiff's alleged ownership of the premises and, in response thereto, defendant counterclaimed for specific performance. From a decree dismissing the complaint and granting specific performance, plaintiff now prosecutes a direct appeal to this court. A freehold is involved. *Livingston* v. *Meyers,* 6 Ill.2d 325.

The property in question consists of three lots located in the village of St. Anne which, on April 28, 1954, plaintiff contracted to sell to defendant and her husband, (the latter since deceased,) as joint tenants. The contract fixed a price of $1200, acknowledged a down-payment of $200, and provided for payment of the balance, with interest, in installments of not less than $15 on the first day of each month. In addition, defendant agreed to pay all taxes subsequent to 1953. Time of payment was declared of the essence and it was agreed that plaintiff, at his option, could forfeit the contract should defendant default upon the agreed payments. Defendant went into possession, built

a house, and thereafter made cash payments to plaintiff of $15 each month but on irrregular dates until May, 1958, at which time a dispute arose between the parties. Of the forty-eight installments paid prior to that date, only two were made on the first day of the month, the remainder being paid and accepted anywhere from one to twenty-five days late.

Plaintiff testified that he received no installments after May, 1958, and was required to pay the real-estate taxes due in that year, whereupon, on August 22, 1958, he served upon defendant a notice demanding payment within 30 days of the entire contract balance, which he stated was $700, upon penalty of forfeiture, and that when she did not comply, he forfeited the contract and formally demanded possession of the property on November 25, 1958. Defendant, on the other hand, testified that she attempted to make a cash payment of $15 to plaintiff on June 19 or 20, 1958, but he refused the money and demanded the property back, after which, on July 19, 1958, she obtained a $30 bank draft and sent it to plaintiff by certified mail only to have it returned unclaimed. Defendant also stated that during the following month, on August 14, 1958, she procured another bank draft, this time for $15, and sent it, along with the prior draft, by certified mail to plaintiff but the letter was refused and subsequently returned. The bank drafts showing Sam Lang, as payee, certified mail envelopes bearing the postal notations "unclaimed" and "refused," and a post-office receipt for certified mail sent to Sam Lang on August 14, 1958, were produced by defendant and admitted in evidence. Defendant further testified that on August 25, 1958, plaintiff refused to accept a tender of all sums then due on the contract, including real-estate taxes, and that thereafter she was prepared to honor her contract obligations but plaintiff refused.

The record indicates that in November, 1958, plaintiff filed suit against defendant in a local justice-of-the-peace

court for possession of the property and, upon hearing, the latter produced the bank drafts that had been refused, whereupon the case was dismissed and no appeal taken by plaintiff. It also appears that the house built by defendant on the property was almost totally destroyed by fire in February, 1959, that plaintiff claimed the proceeds of insurance taken out by defendant, and that the insurance company, which was made a party defendant in this case, has withheld payment pending the determination of the suit.

Where a contract may be forfeited at a vendor's option, it is not the default itself but rather the exercise of that option after default which serves to terminate the agreement (*Brown* v. *Jurczak,* 397 Ill. 532,) and even though time of payment may be declared of the essence, the vendor's right may be temporarily abrogated by his regular acceptance of prior payments at irregular intervals. (*Kingsley* v. *Roeder,* 2 Ill.2d 131; *Davies* v. *Dayton,* 298 Ill. 201; *Smith* v. *Treat,* 234 Ill. 552.) When this has occurred, a vendor is prevented from treating a tardy payment as ground for forfeiture until he has first given vendee reasonable notice of his intention to thereafter demand strict compliance with the terms of the agreement. *Forest Preserve Real Estate Improvement Corp.* v. *Miller,* 379 Ill. 375; *Watson* v. *White,* 152 Ill. 364; *Monson* v. *Bragdon,* 159 Ill. 61.

Here, even though contract installments were current in May, 1958, it is clear that during the prior four-year period late payments were regularly and customarily accepted by plaintiff despite the time-of-essence provision, and that because of this, he was thereafter required to give reasonable notice before considering tardy payments as a default. Since it is admitted that no such warning was actually given, forfeiture was proper only if defendant's other acts before August 22, 1958, the date of plaintiff's only notice, amounted to a default. In this respect, a con-

flict of evidence exists. Plaintiff insists that no payments, however tardy, were tendered after May, 1958, whereas defendant testified that the installments, although late, were sent to plaintiff but were refused. If we accept the former account, then a default had occurred so as to warrant a notice of forfeiture; if we believe the latter, it is equally clear that plaintiff's notice was without foundation and defendant, pending her vendor's unreasonable demands, was temporarily excused from making further useless tenders. (*Monson* v. *Bragdon,* 159 Ill. 61; *Kopeyka* v. *Woodstrom,* 305 Ill. 69; *Nyder* v. *Champlin,* 401 Ill. 317.) Thus, the question becomes one of veracity. Since the chancellor heard the testimony and observed the witnesses in open court, he was in a much better position to make this determination than is a court of review, and his findings in favor of the defendant, being in accordance with the evidence, must now be upheld. *Halla* v. *Chicago Title & Trust Co.* 412 Ill. 39; *Baker* v. *Baker,* 412 Ill. 511; *Bremer* v. *Bremer,* 411 Ill. 454.

Plaintiff also contends that the trial judge erred in admitting oral testimony relating to the justice court proceeding rather than requiring defendant to produce the written docket of the inferior court. Although it may well be that the docket, if available, would have been the best evidence of facts therein contained, we have heretofore held that secondary evidence is admissible unless objected to at the time it is given or offered, and since in the present situation both plaintiff and defendant testified concerning the prior case without objection from either party, the issue cannot now be raised upon review. *Walsh* v. *Wright,* 101 Ill. 178; *Bonczkowski* v. *Kucharski,* 13 Ill.2d 443; *Village of Northbrook* v. *Steerup,* 16 Ill.2d 530.

For the reasons stated, the decree of the circuit court of Kankakee County is affirmed.

*Decree affirmed.*