MUSA TADROS, Plaintiff-Appellee, v. WALTER KUZMAK *et al.*,
Defendants-Appellants.

First District (4th Division)  No. 1—94—0675

Opinion filed December 29, 1995.

302

Morris, Rathnau & De La Rosa, of Chicago (Joseph A. Morris, Joseph N. Rathnau, and Charles H. Bjork, of counsel), for appellants.

Mary J. Schwartz, of Chicago, for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

On January 12, 1991, the plaintiff, Musa Tadros, as purchaser, and the defendants, Walter Kuzmak, Joseph Walinchus, and the First National Bank of Evergreen Park, as trustee under trust number 5215 dated April 24, 1979, as sellers, entered into articles of agreement (articles) for a trustee's deed to a parcel of commercial real estate commonly known as 13319 S. Brainard Avenue, Chicago (property). On October 12, 1992, the plaintiff filed the instant declaratory judgment action requesting, among other things, that the court ascertain the amount owed by the plaintiff under the articles and declare the defendants' notice of forfeiture invalid. After a bench trial, the court determined that the plaintiff was indebted to the defendants in the sum of $105,777.75. The court ordered the plaintiff to pay that

sum to the defendants by a certain date, and ordered the defendants upon such payment to convey the property to the plaintiff. The defendants have appealed that judgment, and for the reasons which follow, we affirm.

The articles provided for a $160,000 purchase price, $60,000 of which was to be paid on or before February 1, 1991. The $100,000 balance, plus or minus specified prorations, was to be paid in equal monthly installments of $3,203.30 commencing on March 1, 1991, and including interest at the rate of 9.5% per annum. In the event the plaintiff failed to make any required payment within 10 days of the due date, the articles provided that he was to pay to the defendants, "as a special late payment handling charge[,] an amount equal to twelve percent (12%) per month of the amount of the payment which [was] then delinquent." In addition to the monthly installments of principal and interest, the plaintiff was required to deposit with the defendants on a monthly basis one-twelfth of 110% of the most recent ascertainable real estate tax bill for the property. These monthly tax deposits were to be used by the defendants for the payment of real estate taxes as they came due. Additionally, the plaintiff was required to carry specified insurance covering the property.

Within a month of the execution of the articles, controversies began to arise between the parties over the plaintiff's compliance with its terms. We will, however, set forth only those events that bear on our disposition of this appeal.

In the period from March 1991 through July 1991, the plaintiff paid all of the required installments of principal and interest, but only one monthly tax escrow payment. He made no payments in August 1991, and only a principal and interest payment in September 1991. On September 6, 1991, and November 15, 1991, the plaintiff sent letters to the defendants requesting a payoff figure, which he never received. From October 1991 through December 1991, the plaintiff failed to make any payments to the defendants.

On January 2, 1992, the defendants sent the plaintiff a notice of default for, amongst other reasons, his failure to pay required monthly installment payments of principal and interest and monthly tax deposits. In that same notice, the defendants stated that they would provide a payoff figure to the plaintiff's lender.

The plaintiff paid nothing to the defendants in the months of January, February, March and April 1992. On May 8, 1992, however, the plaintiff tendered, and the defendants accepted, a payment in the sum of $22,421. Subsequent to the May 8 payment, the plaintiff made no further payments under the articles until after the entry of the judgment in the instant action.

On August 7, 1992, the defendants sent the plaintiff a document entitled "Additional Notice of Default," containing the following statement:

"The seller hereby again declare [sic] the Purchaser MUSA TADROS is in Default and has been in Default under the terms of the Agreement, that the original Agreement is null and void."

On August 31, 1992, the defendants caused a declaration of forfeiture to be filed in the office of the recorder of deeds. On October 15, 1992, after some exchange of correspondence between the parties, the plaintiff filed the instant declaratory judgment action requesting, *inter alia*, that the court ascertain the total amount due the defendants under the articles and enter a finding that the defendants' declaration of forfeiture was void.

Commencing on February 5, 1993, and continuing on various dates through August 18, 1993, the court conducted a trial of the issues presented by the instant action. After all proofs had closed, the defendants filed a second declaration of forfeiture in the recorder's office. Based upon that second declaration of forfeiture, the defendants filed a motion for summary judgment which the trial court struck as untimely.

On November 16, 1993, the trial court entered its judgment finding that after all credits, the plaintiff was indebted to the defendants in the sum of $105,777.75. The court ordered, *inter alia*, that the plaintiff pay that sum to the defendants on or before December 31, 1993, in exchange for which the defendants would convey title to the property to the plaintiff. Within the time provided in the trial court's judgment, the plaintiff tendered the specified sum, but the defendants rejected the tender. Thereafter, the defendants filed their post-trial motion, which was denied on February 10, 1994.

On February 18, 1994, the defendants filed their notice of appeal and two motions before the trial court. One motion requested that the court stay its judgment pending appeal without requiring any bond to be posted. The second motion requested that the trial court set an appeal bond. The trial court denied the motion to stay without bond, set an appeal bond in the sum of $210,000, and granted a stay conditioned upon the filing and approval of a bond in that amount. On May 17, 1994, the defendants filed another motion requesting either a bond waiver or alternatively that bond be set at $25,000. On June 3, 1994, the court denied the defendants' motion and extended the time for the defendants to post their appeal bond to June 14, 1994.

The defendants never posted an appeal bond, and the parties seem to acknowledge that the trial court's judgment has been

complied with. The plaintiff has paid $105,777.75 to the defendants, and the defendants have conveyed the property to the plaintiff.

The defendants have raised essentially five issues on appeal, namely, that the trial court (1) erred in holding that they failed to perfect their August 31, 1992, declaration of forfeiture; (2) erred in ruling that they failed to perfect their August 25, 1993, declaration of forfeiture; (3) improperly computed the amount owed by the plaintiff under the articles; (4) erred in requiring the defendants to post an appeal bond as a condition to staying its judgment pending appeal; and (5) abused its discretion in setting an appeal bond of $210,000.

■ We will first dispose of the defendants' appeal bond issues. There is little doubt that the court's judgment involved an interest in property. As the defendants correctly observed in their motion for stay:

"The judgment entered herein as against Defendants is not a judgment for money but is, instead, a judgment directing convey-ance of land by Defendants to Plaintiff."

Supreme Court Rule 305(b)(3) provides:

"The stay, whether granted by the trial or reviewing court, shall be conditioned upon such terms as are just. A bond may be required in any case, and in the case of a judgment for money, or *a stay for the protection of interests in property, shall be required.*" (Emphasis added.) (134 Ill. 2d R. 305(b)(3).)

By a plain reading of the rule, a bond was required in order to obtain a stay of the trial court's judgment, and the defendants' contentions to the contrary are wholly lacking in merit.

■ As to the issue relating to the reasonableness of the bond set by the trial court, we deem it waived. In the event that the defendants were under a belief that the trial court set an excessive bond under the circumstances of this case, they were at liberty to make applica-tion to this court for a stay of the judgment under the provisions of Supreme Court Rule 305(b)(2) (134 Ill. 2d R. 305(b)(2)). Having failed to avail themselves of this procedural mechanism, they have waived the issue for review. Even if the issue were not waived, since this ap-peal has proceeded without a stay and the judgment of the trial court ·has been fully complied with, the question of the propriety of the amount of the bond required by the trial court is now moot.

We next address the defendants' contention that their August 31, 1992, declaration of forfeiture acted to terminate the plaintiff's inter-est in the articles. Our analysis begins with an examination of the terms of the articles governing the defendants' rights in the event of a default on the part of the plaintiff. The forfeiture provisions are contained in section 19, which provides in pertinent part as follows:

"19. *DEFAULT*:

19.1 If default shall be made in the payment of any sum required to be paid by Purchaser under this Agreement, or under the terms of any other agreement between Seller and Purchaser, or if default shall be made in the performance of any of the other covenants or conditions of this Agreement which Purchaser is required to observe and perform and such default shall continue for ten (10) days if monetary in nature and twenty (20) days if non-monetary in nature after the sending of a written notice to Purchaser, or if the interest of Purchaser in this Agreement shall be levied on under execution or other legal process, \*\*\* then Seller may treat the occurrence of any one or more of the foregoing events as a material breach of this Agreement and thereupon at its option may, without notice or demand of any kind to purchaser or to any other person have the right to exercise the following exclusive remedy against purchaser or any other person after the Purchaser has been in default in the monthly payment for at least 60 days.

(a) Seller shall declare this Agreement and the rights of Purchaser hereunder to be forfeited and terminated in which case Purchaser shall forfeit all payments made on this Agreement. \*\*\* In the event this Agreement and the rights of the Purchaser hereunder shall be declared, [*sic*] forfeited and terminated, as aforesaid, this Agreement shall be null and void and may be so conclusively determined by the filing by Seller of a written declaration of forfeiture hereof in the Recorder's office of the county in which the Premises are located."

■ Courts of equity do not favor forfeitures. However, when a forfeiture has been declared in the manner prescribed in the contract between the parties, a court will give it effect. (*Eade v. Brownlee* (1963), 29 Ill. 2d 214, 193 N.E.2d 786.) The language of the contract upon which a forfeiture is grounded must be narrowly construed. (*Allabastro v. Wheaton National Bank* (1979), 77 Ill. App. 3d 359, 395 N.E.2d 1212.) When, as in this case, an installment agreement for deed provides for forfeiture at the option of the vendor, it is not the vendee's default but rather the vendor's exercise of the forfeiture option that serves to terminate the agreement. (*Lang v. Parks* (1960), 19 Ill. 2d 223, 166 N.E.2d 10.) In order to exercise the option and declare a forfeiture, the vendor must strictly comply with the terms of the contract. *Zeta Building Corp. v. Garst* (1951), 408 Ill. 519, 97 N.E.2d 331.

■ The defendants' letter of August 7, 1992, advised the plaintiff that he was in default under the articles for nonpayment of certain monetary obligations. Additionally, there is little dispute from the record before us that the plaintiff was in fact in default at that time.

However, instead of complying with the terms of the articles, the defendants declared the agreement null and void in their August 7 notice. This they had no right to do. The articles specifically provide they would be rendered null and void upon a declaration of forfeiture, which could only take place if the plaintiff continued in default for a period of 10 days after notice.

The defendants argue that since the plaintiff failed to cure his monetary default within 10 days of their notice of January 2, 1992, they were at liberty to declare a forfeiture on August 31, 1992, without giving the plaintiff any additional notice. We disagree.

A vendor under an installment agreement for deed waives the right to declare a forfeiture based upon a vendee's default when, subsequent to the default, the vendor acts in a manner inconsistent with an intent to exercise the right of forfeiture. (*Brown v. Jurczak* (1947), 397 Ill. 532, 74 N.E.2d 821.) The acceptance of past-due payments after the right to declare a forfeiture has accrued is wholly inconsistent with an intent to exercise such a right. By accepting the plaintiff's tender of $22,421 on May 8, 1992, the defendants waived their right to declare a forfeiture based upon any default occurring before that date. See *Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 422 N.E.2d 221.

Despite this fact, the defendants may still have been entitled to declare a forfeiture based upon defaults occurring after May 8, 1992; however, this right was contingent upon their strict compliance with the articles, including the provisions relating to notice. By declaring the articles null and void on August 7, before the expiration of the contractual 10-day period, the defendants failed to comply with the forfeiture provisions and were themselves guilty of an anticipatory repudiation of the contract. (See *Stonecipher v. Pillatsch* (1975), 30 Ill. App. 3d 140, 332 N.E.2d 151.) We therefore hold that the trial court did not err in finding that the defendants failed to perfect the purported August 31, 1992, declaration of forfeiture.

■ The next issue relates to the defendants' attempt to declare a forfeiture on August 25, 1993; specifically, the defendants argue that the court erred in striking as untimely their motion for summary judgment addressed to that declaration. A brief recitation of the basis for the motion and the procedural posture of the case at the time the motion was filed is necessary to an understanding of our analysis of the issue.

According to the affidavit of one of the defendants, in spring of 1993, the defendants became aware that the plaintiff had assigned his interest in the property to Certified Grocers Midwest, Inc. At the same time, they also learned that the plaintiff allowed a certificate of levy to be recorded against the title to the property.

On May 6, 1993, the sixth day of the trial of this cause, the defendants sought leave to file an amended answer. Although the record lacks any order granting such leave, the amended answer was filed on July 15, 1993, raising five affirmative defenses. The second affirmative defense contended that the plaintiff was in further default due to the assignment of his property interest to Certified and the levy recorded against the property. The defendants claimed that the articles specifically prohibited the plaintiff from assigning any interest in the articles or property without their prior written consent. Additionally, the articles provided that if the plaintiff's interest in the articles was levied upon, such an event could be treated by the defendants as a material breach of the agreement entitling them to declare a forfeiture. Strikingly absent from the allegations of the second affirmative defense is any statement that the defendants had declared a forfeiture.

The plaintiff filed a motion to strike all five affirmative defenses. Although the record indicates that the fourth affirmative defense was stricken on August 3, 1993, there is no order disposing of the plaintiff's motion as it related to the remaining defenses, most notably the second affirmative defense. At trial, testimony established both that the property was levied upon in September 1992 as a result of a judgment entered against the plaintiff in May 1992, and that the plaintiff collaterally assigned his interest in the articles and property to Certified in November 1992. However, there was no evidence showing that the defendants declared a forfeiture based upon these events.

Proofs closed on August 17, 1993, and following arguments, the court requested that the parties submit their calculations as to the sums owed by the plaintiff under the terms of the articles.

On August 25, 1993, the defendants declared the articles forfeited because of the assignment and levy and, the following day, moved for summary judgment based upon this declaration. The plaintiff moved to strike the motion as untimely because it was filed after the conclusion of trial. The court granted the plaintiff's motion and denied a request by the defendants to reopen proofs for the purpose of introducing the August 25 declaration of forfeiture into evidence.

The defendants now contend that it was error to rule their motion untimely merely because it was made after the conclusion of trial, pointing out that section 2—1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1005 (West 1992)) provides that a defendant may file a motion for summary judgment "at any time." We disagree.

In a variety of contexts, it has been held that the purpose of summary judgment proceedings is to determine if any genuine issues of fact exist which require a trial. (See *Hayes v. Board of Fire & Police*

*Commissioners* (1992), 230 Ill. App. 3d 707, 595 N.E.2d 683.) In a proper case, summary judgment is an expeditious means of disposing of litigation without the expense of an unnecessary trial. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576.) The suggestion that such a motion is appropriate after the completion of trial represents the very antithesis of the concept of summary judgment. A motion for summary judgment is a pretrial motion, not a post-trial motion. Our conclusion on this issue is supported by the Code itself. Section 2—1005, which covers summary judgment proceedings, is found in part 10 of the Code, entitled "Pre-Trial Steps." See 735 ILCS 5/2—1001 *et seq.* (West 1992).

For these reasons, we hold that the trial court did not err in finding that the defendants' motion for summary judgment was untimely. Further, to the extent the defendants challenge the court's implicit rejection of their second affirmative defense, we find no error on this point. As stated earlier, it is not a vendee's default that renders the installment agreement forfeited, it is the vendor's exercise of the option of forfeiture. (*Lang*, 19 Ill. 2d 223, 166 N.E.2d 10.) As the defendants introduced no evidence at trial that they had declared a forfeiture based upon the defaults alleged in their second affirmative defense, they failed to meet their burden of proof on an essential element of the defense. Lastly, since the defendants made no argument in their brief addressed to the propriety of the trial court's having denied their request to reopen proofs to present evidence on the matter, we deem the issue waived. *American States Insurance Co. v. National Cycle, Inc.* (1994), 260 Ill. App. 3d 299, 631 N.E.2d 1292; 134 Ill. 2d R. 341(e)(7).

■ The final issue for determination is whether the court erred in its calculation of the amounts owed by the plaintiff under the articles. In its judgment, the court found that after allowing all just credits, claims, and offsets asserted by the parties, the plaintiff was indebted to the defendants in the sum of $105,777.75. The final amount was comprised of the sum of the following items:

| | |
|---|---|
| Principal | $83,573.63 |
| Interest on Principal | 1,984.86 |
| Taxes | 10,518.22 |
| Late Charges | 9,701.04. |

In general, the defendants contend that the court should have declared the plaintiff's financial obligations in accordance with the economic terms of the articles. Specifically, the court erred in refusing to award them interest based upon the express terms of the articles.

In their opening brief on appeal, the defendants begin their discussion with a reference to three paragraphs contained in the articles: (1) subsection 1.8, which provided that if the plaintiff failed to make any of the required payments within 10 days of their due date, he was required to pay the defendants, as a "special late payment handling charge[,] an amount equal to twelve percent (12%) per month of the amount of the payment which is then delinquent"; (2) subsection 7.5, which authorized the defendants to charge the plaintiff 12% interest on all tax payments they made on the plaintiff's behalf; and (3) section 12, which entitled the defendants to reimbursement, plus interest of 12% per month, for any default cured by them on behalf of the plaintiff. The defendants then devote nine pages of their brief to an explanation of why these provisions were inserted into the articles and a recitation of general rules of law applicable to the enforcement of written agreements. The defendants argue that by ordering them to accept a lesser sum than that for which they contracted, the court impermissibly created a contract different from the one made by the parties. Interestingly, however, the defendants never informed this court of the amount they contend was owed them or the calculations that should have been employed to arrive at that sum.

In response, the plaintiff argues that the court was correct in refusing to compound the 12% special handling charge or to assess that charge on delinquent tax escrow payments.

In their reply brief, the defendants argue that the special handling charge of subsection 1.8 was applicable to all payments due by the plaintiff, including tax escrow deposits. They further contend that subsection 1.8 provided for the compounding of the special late payment handling charges.

We have not been provided with a transcript of any proceedings that might have taken place before the trial court on the date it entered judgment or on the date it denied the defendants' post-judgment motion. We have only the judgment order itself. We do know from our examination of the record that the parties filed proposed calculations of the sums due by the plaintiff under the articles. The plaintiff's submission contained two alternative figures. The defendants' submission contained six alternatives, each setting forth two mathematical computations depending upon whether the sum owed was to be calculated as of August 31, 1992, or September 30, 1993, and three additional alternative computations calculated as of September 30, 1993. The judgment order states that the court adopted the defendants' proposed alternative number 4, calculated as of August 31, 1992. The court then reduced this calculation by the

difference between the tax escrow amounts claimed and the actual amount of the taxes paid by the defendants in the year 1992. Defendants' alternative number 4 states that it was arrived at by "computing late payment service charges at 12% per month without compounding; and applying [plaintiff's] payments first to interest, then to late payment service charges, and last to principal, thus accelerating credits to principal and to reduction of interest; and excluding escrow obligations from computation of late payment service charges."

Since the only area of mathematical calculation discussed with any degree of specificity by either of the parties in their briefs relates to the calculation of the special late payment handling charge in subsection 1.8, this is the only issue we will address. And as to that issue, we will only address the questions of interest compounding and whether the special late payment handling charge should have been applied to the monthly tax escrow payments that the plaintiff failed to remit. We deem all other issues relating to the propriety of the trial court's mathematical calculations waived. *American States Insurance Co.*, 260 Ill. App. 3d at 304.

Subsection 1.8 provides:

> "1.8 In the event Purchaser fails to make any of the payments due Seller hereunder within ten (10) days of the date same first becomes due and payable, Purchaser covenants and agrees to pay to Seller as a special late payment handling charge an amount equal to twelve percent (12%) per month of the amount of the payment which is then delinquent."

The plaintiff is correct in his contention that Illinois law does not favor compounding of interest. (*Harrington v. Kay* (1985), 136 Ill. App. 3d 561, 483 N.E.2d 560.) The defendants have cited no contrary authority. It is only when the agreement of the parties specifically provides for compound interest, or interest on interest, that such a method of interest calculation will be employed. *Harrington*, 136 Ill. App. 3d at 570.

In this case, the articles fixed the late payment handling charge at a rate of 12% per month. "Per month" merely denotes the frequency at which the stated rate is to be applied to a delinquent payment. (*Helland v. Helland* (1991), 214 Ill. App. 3d 275, 573 N.E.2d 357.) Subsection 1.8 does not provide that the rate is to be applied to the delinquent payment and any accrued late charges thereon. As the articles do not provide for the compounding of late charges, the trial court was correct in refusing to employ a compounded rate in its calculations.

■ The final issue is whether the court properly refused to award

late payment handling charges on the plaintiff's delinquent tax escrow payments.

The articles required the plaintiff to make monthly tax deposits with the defendants and exempted the defendants from having to segregate those funds or pay the plaintiff interest thereon. The plaintiff testified that on the day that the subject transaction was closed, he and defendant Kuzmak agreed that the tax deposits would be placed in a joint order escrow account. He stated that he ceased making monthly tax deposits when he learned that he was not a signatory on the tax escrow account and that the account permitted withdrawals on the signature of Kuzmak only. Kuzmak acknowledged the agreement to place the plaintiff's tax deposits into an escrow account. He further indicated that the sums in the account would be used solely and exclusively for the payment of taxes, notwithstanding the provision in the articles to the contrary. However, Kuzmak denied that the escrow account was to be a joint order account and testified that he in fact established a tax escrow account at the First National Bank of Oak Lawn about one week after the closing, and that only he and his attorney had the power to make withdrawals from the account.

The law seems well settled; the terms of a written contract can be modified by a subsequent oral agreement even though, as in this case, the contract precludes oral modifications. (*A. W. Wendell & Sons, Inc. v. Qazi* (1993), 254 Ill. App. 3d 97, 626 N.E.2d 280; *Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1987), 165 Ill. App. 3d 815, 520 N.E.2d 831; *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 450 N.E.2d 1286.) There is little doubt from the testimony of the plaintiff and Kuzmak that the articles were orally modified in regard to the maintenance of a segregated tax escrow account. The issue upon which they disagreed was whether the tax escrow account was to be a joint order account. It was the function of the trial court to resolve this conflict in testimony. (*In re Marriage of Durante* (1990), 201 Ill. App. 3d 376, 559 N.E.2d 56.) As a reviewing court, we must take questions of testimonial credibility as resolved in favor of the prevailing party, and we must draw from that evidence all reasonable inferences in support of the judgment of the trial court. *Chicago Title & Trust Co. v. First Arlington National Bank* (1983), 118 Ill. App. 3d 401, 454 N.E.2d 723.

Applying those standards, we find that the court could well have found that the defendants breached the modification of the articles by failing to establish a joint order escrow account, thus relieving the plaintiff of any obligation to make monthly tax deposits and negating any right on the part of the defendants to receive late payment charges thereon.

For all of the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

THEIS and S. O'BRIEN, JJ., concur.