FOURTH DIVISION
 Filed: 10/24/96









No. 1-95-4060

MICHELLE ELANE, As Special Administrator ) APPEAL FROM THE
of the Estate of TERRANCE ELANE, Deceased, ) CIRCUIT COURT OF
 ) COOK COUNTY
 Plaintiff, )
 )
 v. )
 )
ST. BERNARD HOSPITAL, et al., )
 )
 Defendants, ) 
 )
 and ) No. 91 L 02030
 )
LLWELLYN L. GREENE-THAPEDI, )
 )
 Petitioner-Appellant, )
 )
 v. )
 )
JEFFREY M. GOLDBERG & ASSOCIATES, LTD., ) HONORABLE
 ) LEONARD GRAZIAN,
 Respondent-Appellee. ) JUDGE PRESIDING.


PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:
 
 Petitioner, Llwellyn Greene-Thapedi (Thapedi), initiated this
action to recover attorney fees allegedly owed to her by respondent
Jeffrey M. Goldberg and Associates, Ltd. (Goldberg). Thapedi
entered into a fee contract which referred four medical malpractice
cases, including the instant action, to Goldberg. Shortly
thereafter, Thapedi became a judge. Goldberg paid Thapedi a
referral fee after one of the four cases settled, but refused to
pay her such a fee upon settlement of the case at bar. Thapedi
filed a petition seeking to enforce the referral contract. After
an evidentiary hearing was initiated, Thapedi filed motions for
judgment on the pleadings and for summary judgment. The trial
court denied her motions but subsequently directed a finding in
favor of Goldberg. Thapedi has appealed, and we reverse and remand
this cause for further proceedings. 
 Prior to November 1, 1988, Thapedi was retained to recover
damages for the wrongful death of Terrance Elane. Thapedi filed a
complaint in this cause on February 6, 1991. Thapedi later
referred this case and three other medical malpractice cases to
Goldberg shortly before she assumed the bench in December 1992. 
The plaintiffs in the instant action agreed to retain Goldberg and
consented to a division of fees between Goldberg and Thapedi. 
 The record indicates that one of the other referred cases,
Buchanan v. University of Chicago Hospital, et al., was settled in
April 1994 while Thapedi was a sitting judge. After Buchanan
settled, Goldberg paid Thapedi $15,000 for her portion of the fees
and $9,500 for her costs.
 On December 8, 1994, the trial court approved a $750,000
settlement in the instant case and ordered a distribution of
$200,000 in attorney fees to Goldberg. Thapedi made written and
oral demands that Goldberg pay her a portion of the fees as per
their referral fee contract. On April 17, 1995, Thapedi filed a
"Petition for Adjudication of Entitlement to Attorney's Fees,
Consistent with the Referral Fee Contract." 
 On June 19, 1995, the trial court began an evidentiary
hearing. Thapedi identified her agreement with Goldberg and
affirmed that it was entered into on or about December 4, 1992,
before she was sworn in as a judge. She acknowledged that she
could not practice law after assuming the bench, but said that she
remained "a person who would be responsible for any litigation that
might arise (on the referred cases) as a result of either
malfeasance, malpractice or anything else." The hearing terminated
before Thapedi completed her direct testimony and without any
cross-examination. Both the fee referral agreement and the
attorney retainer agreement were admitted into evidence, and the
matter was continued to July 11, 1995. 
 Thapedi noticed an emergency motion for judgment on the
pleadings for hearing on July 11. On that date, the court
concluded that an evidentiary hearing was necessary, ordered a
briefing schedule for the motion, and set the motion for hearing on
August 22, 1995. On July 27, 1995, Goldberg filed an answer to
Thapedi's petition, a response to Thapedi's motion for judgment on
the pleadings, and a cross-motion for judgment on the pleadings. 
In its answer, Goldberg stated that the fee referral contract
attached to Thapedi's petition "speaks for itself," but denied that
the document represented the entire contract. Goldberg admitted
entering into the "Attorney Retainer Agreement" covering this
action which provided that Thapedi would receive 45% of the total
attorney fees if the matter was settled or tried, and admitted
receiving $200,000 pursuant to the court's settlement order. 
Goldberg also admitted it did not pay the referral fee to Thapedi,
but claimed that its refusal was based on a belief that it was
ethically prohibited from doing so. Goldberg included affirmative
defenses which charged that (1) Patricia Elane's revocation of her
consent to the splitting of fees between Goldberg and Thapedi had
rendered the contract void under Rule 1.5(g) of the Rules of
Professional Conduct, (2) Thapedi was prohibited from assuming
legal responsibility as required under the Illinois Rules of
Professional Conduct, and (3) Thapedi's failure to file suit before
the statute of limitations precluded Patricia's recovery and, thus,
vitiated Thapedi's entitlement to a referral fee. 
 On August 22, 1995, the trial court denied Thapedi's motion
for judgment on the pleadings. The court concluded that an
evidentiary hearing was required to determine whether the contract
was enforceable and, if not, to determine the amount that Thapedi
was entitled to on a quantum meruit basis. The matter was
continued to October 17, 1995.
 On September 29, 1995, Thapedi filed a motion for summary
judgment which the trial court denied on October 17, 1995. Upon
the denial of her summary judgment motion, Thapedi's counsel
informed the court that she had no further evidence to present. 
Thereupon, Goldberg moved for a directed finding which the trial
court granted. Judgment was entered in favor of Goldberg and
Thapedi appealed.
 Thapedi first contends that the trial court erred in denying
her motions for judgment on the pleadings and for summary judgment.
Thapedi argues that no genuine issue of fact existed and that the
validity and enforceability of the contract were questions of law. 
Benn & Assoc., Ltd. v. Nelsen Steel & Wire, Inc., 107 Ill. App. 3d
442, 446, 437 N.E.2d 900 (1982). Goldberg counters that this court
has no jurisdiction to review the denial of either motion.
 We hold that the trial court properly denied Thapedi's motion
for summary judgment because it was untimely. The purpose of
summary judgment proceedings is to determine if any genuine issues
of fact exist which require a trial. Hayes v. Board of Fire &
Police Commissioners, 230 Ill. App. 3d 707, 712, 595 N.E.2d 683
(1992). Thapedi's motion, filed more than three months after the
evidentiary hearing was initiated, was contrary to the very concept
of summary judgment. Our conclusion that summary judgment is a
pretrial motion is supported by the fact that section 2-1005 of the
Code of Civil Procedure (Code), which addresses summary judgment
proceedings, is found in part 10 of the Code, which is entitled
"Pre-Trial Steps." 735 ILCS 5/2-1001 et seq. (West 1994); Tadros
v. Kuzmak, 277 Ill. App. 3d 301, 309, 660 N.E.2d 162 (1995).
 In addition, Thapedi's summary judgment motion was untimely
pursuant to Rule 2.1(f) of the Circuit Court of Cook County which
states that "[a]ll motions for summary judgment shall be filed and
noticed for hearing not later than forty-five (45) days before the
trial date, except by prior leave of court and for good cause
shown." Cook Co. Cir. Ct. R. 2.1(f) (amended, eff. April 23,
1992).
 Even if Thapedi's motion for summary judgment was not
untimely, the denial of a motion for summary judgment is not
reviewable on appeal because any error in the denial of such a
motion merges into the subsequent judgment. Banwart v. Okesson, 83
Ill. App. 3d 222, 225, 403 N.E.2d 1234 (1980). An exception to the
rule recognizes that nothing precludes an appellate court from
reviewing the denial of a motion for summary judgment in an appeal
from a final judgment where there has been no evidentiary hearing
and the party seeking review has done nothing to avoid or prevent
such hearing or trial. Cedric Spring & Associates, Inc. v. N.E.I.
Corp., 81 Ill. App. 3d 1031, 1034, 402 N.E.2d 352 (1980). 
 The instant case presents unique circumstances given that an
evidentiary hearing on Thapedi's petition had commenced prior to
the filing of her summary judgment motion. The chronology of the
proceedings does not, however, bring this case within the exception
articulated in Cedric Spring as Thapedi elected to stand on her
decision not to produce further evidence after the trial court
denied her motion for summary judgment. Since Thapedi effectively
prevented any further hearing after the denial of her motion, she
cannot take advantage of the exception to the rule. Therefore, we
dismiss her appeal from the denial of her motion for summary
judgment. 
 Thapedi also claims she was entitled to a judgment on the
pleadings. The trial court denied her motion on August 22, 1995,
after concluding that an evidentiary hearing was necessary to
determine whether the contract was enforceable. 
 A motion for judgment on the pleadings admits the truth of all
well-pleaded facts in the opponent's pleadings and raises the issue
of whether, based on the pleadings alone, the movant is entitled to
judgment as a matter of law. See e.g. Alexander v. Mermel, 27 Ill.
App. 2d 281, 169 N.E.2d 569 (1960). Where, as in this case, a
petitioner moves for judgment on the pleadings, the court is faced
with one of two issues of law, namely: whether the denials
contained in the respondent's answer place the parties at issue on
a material fact which forms the basis of the petitioner's right to
the relief she seeks; or whether the facts alleged in the answer
constitute a legally sufficient defense to the petitioner's claim. 
We believe Thapedi failed to sufficiently demonstrate that a
judgment based solely on the pleadings should be entered in her
favor. In its answer, Goldberg stated that the fee referral
contract "speaks for itself," but it denied that the document
represented the entire contract. Goldberg's answer and affirmative
defenses called into question the terms of the referral contract;
therefore, the trial court did not err in denying this motion.
 Thapedi last contends that the trial court erred in granting
Goldberg's motion for a directed finding. In order to determine
whether the trial court erred in this regard, we must first
determine the propriety of the fee referral agreement at issue. 
Our resolution of the matter appears to present an issue of first
impression in Illinois. 
 Rule 1.5 of the Illinois Rules of Professional Conduct
provides in pertinent part:
 "(f) Except as provided in Rule 1.5(j), a lawyer shall
 not divide a fee for legal services with another lawyer
 who is not in the same firm, unless the client consents
 to employment of the other lawyer by signing a writing
 which discloses:
 (1) that a division of fees will be made;
 (2) the basis upon which the division will be made,
 including the economic benefit to be received by the
 other lawyer as a result of the division; and
 (3) the responsibility to be assumed by the other
 lawyer for performance of the legal services in
 question.
 (g) A division of fees shall be made in proportion to the
 services performed and responsibility assumed by each
 lawyer, except where the primary service performed by one
 lawyer is the referral of the client to another lawyer
 and
 (1) the receiving lawyer discloses that the
 referring lawyer has received or will receive
 economic benefit from the referral and the extent
 and basis of such economic benefit, and
 (2) the referring lawyer agrees to assume the same
 legal responsibility for the performance of the
 services in question as would a partner of the
 receiving lawyer." 134 Ill. 2d R. 1.5(f), (g).
 The record indicates that the contract between Thapedi and Goldberg
resembled the fee arrangement contemplated in Rule 1.5 where the
primary service performed by the referring lawyer was the referral
of the client to the other lawyer. While Thapedi filed the
complaint in the underlying action, most of the work on the case
appears to have been performed by Goldberg. 
 The fee agreement between Thapedi and Goldberg provided that
Thapedi was to receive 45% of the total attorney fees if the matter
was settled or tried. Although the referral fee contract itself
does not state that Thapedi assumed "legal responsibility," the
contract provided that Goldberg would represent these claims
"subject to the terms of the retainer agreement." The "Attorney
Retainer Agreement," signed by Thapedi, Goldberg, and the
plaintiffs in the instant case, provided that "the 'referral
attorney' [Thapedi] will remain legally responsible for the
performance of services to the extent required under Rule 1.5 of
the Illinois Rules of Professional Conduct." The retainer
agreement further explained the economic benefits to be received by
Thapedi in the event of a settlement or trial. Facially, the
contract here fulfilled the requirements of Rule 1.5.
 We must next determine whether the "legal responsibility"
proviso in Rule 1.5(g), as applied to the facts here, is
inconsistent with Illinois Supreme Court Rule 65 which states that
a judge should not practice law. 134 Ill. 2d R. 65F. In support
of her position, Thapedi cites to informal opinions issued by the
Chicago Bar Association Professional Responsibility Committee and
the Illinois Judicial Ethics Committee which interpreted the rules
regarding division of fees as applied to a contract involving an
attorney who later becomes a judge. Although these opinions are
not precedential, we find their analysis sound. 
 The legal ethics opinion issued in 1988 by the Chicago Bar
Association's Professional Responsibility Committee interpreted the
former Rule 2-107(a)(1),(2) of the Illinois Code of Professional
Responsibility, which was substantively identical to the current
Rule 1.5(f),(g). The Committee opined that "legal responsibility"
within the meaning of Rule 2-107 involved "the acceptance of
passive, financial guaranty obligations." Chicago Bar Association
PRC Opinion 87-2, at 4. This conclusion was based on the Committee
Commentary to Rule 2-107 which stressed that the rule was intended
to permit the payment of referral fees without requiring actual
participation by the referring attorney. The commentary stated
that the rule "expressly sanctions payment of a fee to the
referring lawyer where that lawyer takes no part in the actual
handling of the case--a practice which is apparently prohibited by
the ABA rule--so long as the referring lawyer assumes
responsibility for the work of the other as though he were the
other's partner, and the total fee of the lawyers does not exceed
reasonable compensation for the legal services performed." Ill.
Rev. Stat. 1985, ch. 110A, Canon 2, Rule 2-107 Committee Comments
at 696. The Committee concluded that the retention of such legal
responsibility should not be deemed to constitute the practice of
law in violation of Supreme Court Rule 65F (134 Ill. 2d R. 65F), or
be deemed to compromise a judge's duty to minimize the risk that
extrajudicial duties conflict with her judicial duties in violation
of Rule 65C (134 Ill. 2d R. 65C). 
 A 1994 advisory opinion from the Illinois Judicial Ethics
Committee reaffirmed this analysis, stating that "legal
responsibility" consists solely of potential financial
responsibility for any malpractice action against the recipient of
the referral. IJEC Opinion No. 94-16, at 2. Although this opinion
notes that the Ethics Committee did not address the propriety of a
fee sharing arrangement if the referral was made in anticipation of
the referring lawyer becoming a judge, we find no logic in drawing
such a distinction. Our conclusion here, that a judge's "legal
responsibility" in reference to a referred case does not involve
the practice of law within the meaning of Supreme Court Rule 65F
(134 Ill. 2d R. 65F), is equally applicable whether or not the
referring attorney is aware at the time of contracting that she
will assume the bench. Accordingly, we conclude that a fee
arrangement involving a referring lawyer who later becomes a judge
is enforceable as long as it is consistent with Rule 1.5's
provisions as to client consent and the assumption of legal
responsibility by the referring lawyer. 
 Where, as here, the trial court granted a directed finding in
favor of the defendant, a reviewing court must determine whether
the trial court erred in deciding that the plaintiff failed to
present a prima facie case. Kokinis v. Kotrich, 81 Ill. 2d 151,
155, 407 N.E.2d 43 (1980). To establish a prima facie case, the
plaintiff must present at least some evidence to support each
element essential to her cause of action. Illinois Health Care
Ass'n v. Wright, 268 Ill. App. 3d 988, 995, 645 N.E.2d 1370 (1994). 
If the trial court finds that the plaintiff has not established a
prima facie case, it should direct a finding in favor of the
defendant. Kokinis, 81 Ill. 2d at 155. A trial court's decision
on this matter will not be reversed on appeal unless it is contrary
to the manifest weight of the evidence. Kokinis, 81 Ill. 2d at
154.
 Thapedi's petition alleged, among other things, that: (1) she
and Goldberg entered into a referral fee contract; (2) they signed
a separate attorney retainer agreement which was approved by the
plaintiffs; (3) the referral contract provided that Goldberg was to
pay Thapedi 45% of the total attorney fees if the case was settled
or tried; (4) the court approved a settlement in the instant case
pursuant to which Goldberg was paid $200,000 in attorney fees; and,
(5) despite Thapedi's demands, Goldberg refused to pay her a
referral fee. In its answer, Goldberg admitted, among other
things, that: (1) it entered into the attorney retainer agreement
which provided that Goldberg would pay Thapedi 45% of the total
attorney fees if the case was settled or tried; (2) it received
$200,000 in attorney fees upon settlement of the instant case; and,
(3) it had not paid Thapedi a referral fee in this action. 
 At the evidentiary hearing initiated on June 19, 1995, Thapedi
identified her agreement with Goldberg and affirmed that it was
entered into on or about December 4, 1992, before she was sworn in
as a judge later that month. She acknowledged that she could not
practice law after assuming the bench, but said that she remained
"a person who would be responsible for any litigation that might
arise (on the referred cases) as a result of either malfeasance,
malpractice or anything else." 
 Although Thapedi does not specifically use the words "breach
of contract," her petition set out sufficient factual allegations
to establish such a claim. See Klem v. Mann, 279 Ill. App. 3d 735,
740-41, 665 N.E.2d 514 (1996) (a claim for breach of contract is
established by alleging that a contract existed between the
parties, the plaintiff substantially performed its obligation under
the contract, the defendant breached the contract, and the
plaintiff was damaged by the breach). Furthermore, our review of
the record leads us to conclude that Thapedi sufficiently
established a prima facie case as to her entitlement to referral
fees under the agreement and in conformance with Rule 1.5(f), (g)
(134 Ill. 2d R. 1.5(f), (g)). The referral fee contract and the
attorney retainer agreement, both admitted into evidence, together
with Goldberg's admissions in its answer provided support for each
element of her cause of action.
 Since Thapedi presented evidence sufficient to form a prima
facie case, the burden of production then shifted to Goldberg to
come forward with evidence to establish the affirmative matter set
forth in its answer. Therefore, the trial court erred in directing
a finding and entering judgment in favor of Goldberg. 
 For the foregoing reasons, we reverse and remand this action
to the circuit court of Cook County for further proceedings
consistent with this opinion. 
 Reversed and remanded.
 CAHILL and O'BRIEN, JJ., concur.